

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 1 7 2015

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Sept. 17, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GREGG BECKER, | ) | No. 90946-6 |
| Respondent, | ) ) | |
| v. | ) ) | En Banc |
| COMMUNITY HEALTH SYSTEMS, INC. d/b/a COMMUNITY HEALTH SYSTEMS PROFESSIONAL SERVICES CORPORATION d/b/a COMMUNITY HEALTH SYSTEMS PSC, INC. d/b/a/ ROCKWOOD CLINIC P.S.; and ROCKWOOD CLINIC, P.S., | ) ) ) ) ) ) ) ) | |
| Petitioners. | ) ) | Filed     SEP 1 7 2015 |

JOHNSON, J.—This case involves the "jeopardy" element of the tort for wrongful discharge against public policy and whether the Sarbanes-Oxley Act of 2002 (SOX), 18 U.S.C. § 1514A, or the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), 15 U.S.C. § 78u-6, bar Gregg Becker from recovery under the tort claim. This is one of three concomitant cases before us concerning the "adequacy of alternative remedies" component of the jeopardy element. *See Rose v. Anderson Hay & Grain Co.*, No. 90975-0 (Wash. Sept. 17, 2015), and *Rickman v. Premera Blue Cross*, No. 91040-5 (Wash. Sept. 17, 2015).

Our recent holding in *Rose* instructs that alternative statutory remedies are to be analyzed for exclusivity, rather than adequacy. Under that formulation, neither SOX nor Dodd-Frank preclude Becker from recovery. We affirm the trial court's denial of Community Health Systems Inc.'s (CHS) CR 12(b)(6) motion, and affirm the Court of Appeals in upholding that decision upon certified interlocutory review.

## FACTS

Becker began working for Rockwood Clinic PS, an acquired subsidiary of CHS,[1] as its chief financial officer (CFO) in February 2011. As a publicly traded company, CHS is required to file reports with the United States Securities and Exchange Commission (SEC). These reports are available publicly for the purpose of accurately advising the SEC, and CHS' creditors and investors, of CHS' profitability and business strategies. As Rockwood's CFO, Becker was required by state and federal law to ensure that Rockwood's reports did not mislead the public, which also required his personal verification that the reports did not contain any inaccurate material facts or material omissions. As the CFO, Becker himself was

---

[1] Rockwood is an acquired entity of CHS and does business as Community Health Systems Professional Services Corporation (CHSPS). CHS is a publically traded company incorporated in Delaware and licensed to do business in Washington. Becker's allegations are against CHS as the employer; however, the superior court dismissed CHS as a defendant, since CHS is a holding company with no contacts in Washington. CHSPS remains a party to the lawsuit.

2

potentially criminally liable for misleading reporting. In October 2011, Becker submitted to CHS' financial department an "EBIDTA," a calculation of earnings before interest, taxes, depreciation, and amortization—it serves as an important measure of financial health for publically traded companies. Becker's EBIDTA report projected a $12 million operating loss for Rockwood the upcoming year.

Unbeknownst to Becker, when CHS acquired Rockwood it represented to creditors that the Rockwood acquisition would incur only a $4 million operating loss. To cover the discrepancy, CHS' financial supervisors allegedly directed Becker to correct his EBIDTA to reflect the targeted $4 million loss. CHS did not provide a basis for its low calculation. Becker refused, fearing that the projection would mislead creditors and investors in violation of SOX.

Soon after, Rockwood's chief executive officer (CEO) initiated an unscheduled evaluation of Becker's performance in which the CEO marked him with an unacceptable performance rating and placed him on a performance improvement plan. As part of his improvement plan, Becker was directed to edit the EBIDTA projected loss to reflect the $4 million valuation. The CEO made clear that Becker's refusal to do so put his position in jeopardy.

Becker sought legal counsel and decided to report his concerns upward: he wrote to CHS' and Rockwood's CEOs, explaining his concern that CHS was attempting to misrepresent its projected budget in violation of financial reporting

laws. He wrote that he felt compelled to resign unless CHS responded to his concerns. The next day, CHS and Rockwood accepted Becker's resignation.

Becker filed two claims in Spokane County Superior Court: one for wrongful discharge in violation of public policy and the other for a violation of SOX.[2] CHS successfully removed the case to federal court, prompting Becker to amend his complaint and omit his federal SOX claim. The federal court remanded the case back to the state superior court. Becker's amended complaint alleged wrongful discharge for Becker's refusal to violate financial reporting laws, which resulted in economic and emotional distress damages.

CHS filed a CR 12(b)(6) motion to dismiss the complaint for failure to state a claim, contending that the jeopardy element of the tort had not been met because there were adequate alternative means to protect the public policy of honesty in corporate financial reporting. The trial court denied the motion, and CHS successfully moved to have the question certified for interlocutory review under RAP 2.3(b)(4). The Court of Appeals accepted review and determined that the jeopardy element had been satisfied because the alternative administrative enforcement mechanisms of SOX and Dodd-Frank were inadequate and therefore

---

[2] Becker also filed a whistle blower complaint with the United States Occupational Safety and Health Administration, but it was dismissed. His appeal on that matter will be heard in January 2016.

did not foreclose the common law tort remedies for employees. *Becker v. Cmty. Health Sys., Inc.*, 182 Wn. App. 935, 332 P.3d 1085 (2014), *review granted*, 182 Wn.2d 1009, 343 P.3d 759 (2015).

## ANALYSIS

We review the trial court's ruling on a motion to dismiss de novo. Factual allegations are accepted as true, and unless it appears beyond doubt that the plaintiff can prove no set of facts consistent with the complaint that would entitle him or her to relief, the motion to dismiss must be denied. *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978).

We accepted review of these three cases—*Becker*, *Rose*, and *Rickman*—to determine whether other nonexclusive administrative remedies nevertheless preempt the tort for wrongful discharge when those statutes are "adequate" to promote the public policy. In our decision in *Rose*, we determined that the "adequacy of alternative remedies" analysis misapprehends the role of the common law and the underlying purpose of the tort. When other statutory remedies provide alternative remedies to protect the public policy, we concluded that exclusivity, not adequacy, is the key inquiry. Applied to these facts, we agree with the Court of Appeals that Becker's claim properly survives CHS' CR 12(b)(6) motion to dismiss.

The tort for wrongful discharge in violation of public policy is a narrow exception to the at-will doctrine. It is recognized as a means of encouraging employees to follow the law and preventing employers from using the at-will doctrine to subvert those efforts to promote public policy. To state a cause of action, the plaintiff must plead and prove that his or her termination was motivated by reasons that contravene an important mandate of public policy. We maintain a strict clarity requirement in which the plaintiff must establish that the public policy is clearly legislatively or judicially recognized. Once established, the burden shifts to the employer to plead and prove that the employee's termination was motivated by other, legitimate, reasons. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232-33, 685 P.2d 1081 (1984).

Because we construe this tort exception narrowly, wrongful discharge claims have generally been limited to four scenarios:

> (1) where employees are fired for refusing to commit an illegal act;
> (2) where employees are fired for performing a public duty or
> obligation, such as serving jury duty; (3) where employees are fired
> for exercising a legal right or privilege, such as filing workers'
> compensation claims; and (4) where employees are fired in retaliation
> for reporting employer misconduct, i.e., whistle blowing.

*Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 936, 913 P.2d 377 (1996) (citing *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989)). When the plaintiff's case does not fit neatly within one of these scenarios, a more refined

analysis may be necessary, and the four-factor Perritt analysis may provide helpful guidance. *Gardner*, 128 Wn.2d at 941 (citing HENRY H. PERRITT, JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.7 (1991)).[3]

But such detailed analysis is unnecessary here. Becker's complaint alleges that he was terminated for refusing to criminally misrepresent the EBIDTA report of Rockwood's operating losses. His case falls squarely within the first scenario—termination for refusal to commit an illegal act. Taking his allegations as true, as we must when reviewing a motion to dismiss, Becker has pleaded sufficient facts to establish a claim that his discharge was in violation of clear, important public policy.

As to the potential exclusionary effects of alternative statutes, we review these statutes for exclusivity, not adequacy. For the same reasons discussed in *Rose*, we reject the argument that the adequacy of alternative remedies approach plays any legitimate role in our analysis. If SOX and Dodd-Frank already protect whistle-blowers from termination, then the availability of this alternative method of recovery does not impact the employer's discretion to terminate employees

---

[3] Under our adoption of the Perritt analysis, courts examine (1) the existence of a "clear public policy" (clarity element), (2) whether "discouraging the conduct in which [the employee] engaged would jeopardize the public policy" (jeopardy element), (3) whether the "public-policy-linked conduct caused the dismissal" (causation element), and (4) whether the employer is "able to offer an overriding justification for the dismissal" (absence of justification element). *Gardner*, 128 Wn.2d at 941. *Gardner*, 128 Wn.2d at 941. This framework was specifically helpful in *Gardner*, a very factually unique case that demanded a more refined analysis.

without cause. The elimination of this adequacy requirement has no effect on the breadth of the at-will doctrine; rather, its removal from our analysis merely eliminates a loophole for employers who intentionally contravene public policy to escape liability. Once a plaintiff can establish that the employer's actions violate an important mandate of public policy, no legitimate reason exists for excusing those actions.

In support of the "strict adequacy" requirement, CHS also argues that the concurrent availability of this tort with the SOX and Dodd-Frank would undermine the statutes' goal in encouraging whistle-blowers. SOX provides relief only for those employees who actually report, not those who merely refuse to violate the law. CHS argues that the tort would encourage employees to "sit on their hands" rather than report violations because the concurrent availability of the tort would reward those employees for their indifference by providing relief when they deserve none. Without addressing the numerous flaws to this argument, we maintain that it is with the proper authority of Congress and the legislature to address that concern by expressly limiting remedies only to those provided by the statute. Congress and the legislature possess greater relative competency to determine how and when employees should be afforded remedies for their termination, and retain the authority to determine when its administrative remedies should be exclusive. Here, Congress expressly declared that the remedies available

under SOX and Dodd-Frank supplement rather than preclude state or federal remedies. *See* 18 U.S.C. § 1514A(d); 15 U.S.C. § 78u-6(h)(3). We respect Congress' choice to avail these administrative remedies in addition to our existing common law, and we decline to contravene that intent by barring Becker from full adjudication of his claim.

CONCLUSION

We agree with the Court of Appeals that Becker's allegations constitute a compelling case for protection under a public policy tort. Taking these allegations as true, as we must at this stage of review, Rockwood and CHS directed Becker to commit a crime for which he would be personally responsible. By doing so, "Rockwood and CHS forced him to choose between the consequences of disobeying his employer and the consequences of disobeying criminal law." *Becker*, 182 Wn. App. at 952 (citing DANIEL P. WESTMAN & NANCY M. MODESITT, WHISTLEBLOWING: THE LAW OF RETALIATORY DISCHARGE ch. 5.II.A.1, at 101 (2d ed. 2004)). When an employer intentionally uses the at-will doctrine to subvert public policy in this manner, it exposes itself to potential liability for

wrongful termination. We affirm the Court of Appeals.

WE CONCUR:

No. 90946-6

FAIRHURST, J. (dissenting)—I dissent because section 806(a) of the Sarbanes-Oxley Act of 2002 (SOX), 18 U.S.C. § 1514A,[1] provides an adequate alternative remedy that should prevent Gregg Becker from bringing a claim for wrongful discharge in violation of public policy.

This is one of three cases before us that involves the jeopardy element of the tort of wrongful discharge in violation of public policy and that element's corresponding adequacy of alternative remedies analysis. *See Rose v. Anderson Hay & Grain Co.*, No. 90975-0 (Wash. Sept. 17, 2015); *Rickman v. Premera Blue Cross*, No. 91040-5 (Wash. Sept. 17, 2015). In *Rose*, I wrote a detailed dissent explaining

---

[1] The majority also asserts that section 922 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), 15 U.S.C. § 78u-6, could provide an alternative statutory remedy. The majority is correct that Dodd-Frank could provide an adequate alternative remedy. However, since SOX provides an adequate remedy to preclude Gregg Becker's claim for wrongful discharge, it is not necessary for this dissent to include an in depth discussion of the remedies available through Dodd-Frank.

1

why I believe it is incorrect for the court to overrule precedent and adopt a new analytical framework that eliminates the adequate alternative remedies analysis from a claim for wrongful discharge in violation of public policy.

Pursuant to the framework established in *Rose*, the majority finds that Becker's claim for wrongful discharge in violation of public policy should not be dismissed. Majority at 2. Because I disagree with the analytical framework established in *Rose*, I would analyze Becker's claim for wrongful discharge in violation of public policy under this court's precedent pre-*Rose* and would hold that Becker's claim should be dismissed because he cannot establish the jeopardy element.

Prior to *Rose*, to bring a claim for wrongful discharge in violation of public policy the plaintiff was required to prove (1) the existence of clear public policy (the clarity element), (2) that discouraging the conduct in which he or she engaged would jeopardize the public policy (the jeopardy element), and (3) the public-policy-linked conduct caused the dismissal (the causation element). *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941, 913 P.2d 377 (1996). Additionally, the employer must not be able to offer an overriding justification for the dismissal (the absence of justification element). *Id.* The only element at issue here is the jeopardy element.

The jeopardy element ensures that an employer's management decisions will not be challenged unless a public policy is genuinely threatened. *Id.* at 941-42. To establish jeopardy, the plaintiff must show that he or she "engaged in particular conduct, and the conduct directly relates to the public policy, or was necessary for the effective enforcement of the public policy." *Id.* at 945 (emphasis omitted). The plaintiff also must show that other means of promoting the public policy are inadequate. *Id.* In addition, the plaintiff must show how the threat of discharge from his or her current position will discourage others from engaging in desirable conduct. *Id.*

Before *Rose*, proving the jeopardy element was the most difficult when the statute that declared the alleged public policy also provided a remedy. HENRY H. PERRITT, JR., WORKPLACE TORTS: RIGHTS AND LIABILITIES § 3.15, at 78 (1991). This court found that if an available statutory remedy was adequate, then the plaintiff was precluded from bringing a tort claim for wrongful discharge. *See Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 182-83, 125 P.3d 119 (2005); *Cudney v. ALSCO, Inc.*, 172 Wn.2d 524, 531-33, 259 P.3d 244 (2011); *Hubbard v. Spokane County*, 146 Wn.2d 699, 717, 50 P.3d 602 (2002). This made sense because the jeopardy element was intended to ensure that the tort claim was available only if a public policy was genuinely threatened. If the public policy was already protected

under a statutory scheme, then there was no reason to recognize a tort remedy for the employee.

It is important to emphasize that the issue in deciding whether an employee has a claim for wrongful discharge is not whether the employee will be adequately or fully compensated. "Instead, the inquiry is solely to decide whether the tort must be recognized to ensure that the public policy at issue is adequately protected." *Piel v. City of Federal Way*, 177 Wn.2d 604, 623, 306 P.3d 879 (2013) (Madsen, C.J., concurring in dissent).

The majority asserts that rejecting the adequacy analysis "merely eliminates a loophole for employers who intentionally contravene public policy to escape liability." Majority at 8. The adequacy of alternative remedies analysis did not create a loophole for an employer to escape liability. Where an adequate statutory remedy exists, the employer can be held liable to the same or nearly same extent under the statute.

A statutory remedy was adequate if it provided comprehensive remedies. This court also examined the statutory language to determine if the legislature indicated that the statutory remedy, on its own, was not sufficient to vindicate the public policy. *See Piel*, 177 Wn.2d at 617. This court found that a remedy was comprehensive if it provided damages equivalent to those available in a tort action

4

and provided a process through which the employee could hold the employer liable. *See Korslund*, 156 Wn.2d at 182-83.

In *Korslund*, we found that an administrative remedy in the Energy Reorganization Act of 1974 (ERA), 42 U.S.C. § 5851, adequately protected the public policy, such that the plaintiffs were precluded from asserting a claim for wrongful discharge. *Korslund*, 156 Wn.2d at 181-83. The ERA provided an administrative process for adjudicating whistle-blower complaints and required a violator to reinstate the employee to his or her former position with the same compensation, terms and conditions of employment, back pay, and compensatory damages. *Id.*

Here, the statutory remedy in SOX is an adequate alternative remedy to protect the alleged public policy. SOX provides comprehensive whistle-blower protections that apply even where an employee believes that misconduct is about to occur. 18 U.S.C. §§ 1514A(a)(1), 1341. SOX protects persons who disclose information that they reasonably believe constitutes a violation of Securities and Exchange Commission (SEC) rules or regulations when the information is provided to "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. § 1514A(a)(1)(C)). By enacting SOX, Congress intended

5

to dismantle a corporate culture that discouraged employees from reporting fraudulent behavior internally or to outside authorities. *Day v. Staples, Inc.*, 555 F.3d 42, 52 (1st Cir. 2009).

SOX provides that no company or agent of that company may discharge an employee because of any lawful act done by that employee to provide information or assist in an investigation regarding any conduct that "the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). SOX applies even if the company attempts to commit fraud. *Id.*; *see* 18 U.S.C. § 1341. A person who alleges discharge in violation of SOX may seek relief by filing a complaint with the secretary of labor. 18 U.S.C. § 1514A(b)(1)(A). This action should be brought within 180 days after the date on which the violation occurs. 18 U.S.C. § 1514A(b)(2)(D).[2] If an employee prevails, he or she shall be entitled to all relief necessary to make the employee whole. 18 U.S.C. § 1514A(c)(1). SOX specifically provides that relief shall include .reinstatement with the same seniority status that the employee had, back pay with

---

[2]18 U.S.C. § 1514A(b)(1)(B) provides that an action at law or equity can be brought in federal district court, if the secretary has not issued a final decision within 180 days and there is no showing the delay is due to bad faith of complainant.

interest, and compensation for any special damages that were the result of the discrimination. 18 U.S.C. § 1514A(c)(2).

The remedies available through SOX are very similar to the remedies available in the ERA examined in *Korslund*. Under SOX, compensation for employees includes back pay with interest and compensation for any special damages. SOX provides that a prevailing employee is entitled to "all relief necessary to make the employee whole." 18 U.S.C. § 1514A(c)(1). This may include relief for noneconomic damages, such as emotional distress. *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 267 (5th Cir. 2014); *see also Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1138-39 (10th Cir. 2013).

Other courts that have examined the remedy available in SOX, have determined that SOX provides an adequate remedy such that the tort claim for wrongful discharge should be precluded. *See Nunnally v. XO Commc'ns*, No. C07-1323JLR, 2009 WL 112849, at *12 (W.D. Wash. Jan. 15, 2009) (court order) (noting that SOX provided an adequate means for promoting the public policy); *see also Lawson v. FMR LLC*, 724 F. Supp. 2d 141, 165-66 (D. Mass. 2010), *rev'd on other grounds*, 670 F.3d 61 (1st Cir. 2012), *rev'd and remanded*, __ U.S. __, 134 S. Ct. 1158, 188 L. Ed. 2d 158 (2014).[3]

---

[3]However, in *Willis v. Comcast of Oregon II, Inc.*, No. 06-1536-AA, 2007 WL 3170987, at *2 (D. Or. Oct. 25, 2007) (court order), the court found that the SOX remedy did not preclude

Since SOX's remedies are comprehensive, I would next examine the statutory language to determine if Congress indicated that the statutory remedy is insufficient to vindicate the public policy. SOX contains a nonpreemption clause that reads, "Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law, or under any collective bargaining agreement." 18 U.S.C. § 1514A(d). Because the statute declares that its remedies do not preclude others, the Court of Appeals found that there was the "'strongest possible evidence'" that the statutory remedies were inadequate on their own to promote the public policy at issue. *Becker v. Cmty. Health Sys., Inc.*, 182 Wn. App. 935, 948, 332 P.3d 1085 (2014) (quoting *Piel*, 177 Wn.2d at 617). The majority also finds that the nonpreemption clause indicated that the remedy in SOX is not exclusive and does not preclude the tort action. Majority at 9.

The nonpreemption clause in SOX is different from the statutory language at issue in *Piel*. Chapter 41.56 RCW, the statute at issue in *Piel*, established the statutory remedies available through the Public Employee Relations Commission,

---

the tort of wrongful discharge because the legislature indicated that this statute was not intended to preempt available state law claims. In Oregon, to defend against a claim of wrongful discharge in violation of public policy, the defendant must demonstrate that the remedy for violation of the statute is adequate in comparison to the remedy available under a common law tort action and that the legislature intended the statute to abrogate the common law. *Olsen v. Deschutes County*, 204 Or. App. 7, 14, 127 P.3d 655 (2006). In Washington, prior to *Rose*, an employer did not need to show that the legislature intended the statute to abrogate the common law. Instead, the employee needed to show there was not an adequate alternative remedy such that the tort claim is not necessary to protect the public policy. *See Korslund*, 156 Wn.2d at 183.

and contained a provision that stated, "'The provisions of this chapter are intended to be additional to other remedies and shall be liberally construed to accomplish their purpose.'" *Piel*, 177 Wn.2d at 617 (quoting RCW 41.56.905). Unlike the statute in *Piel*, nothing in SOX states that the remedy in the statute is intended to be additional to other remedies. Instead, the nonpreemption clause in SOX states that it should not preclude other remedies.[4] While SOX does not expressly preclude the tort claim, its language does not indicate that its remedy is inadequate. The question this court should ask when evaluating an alternative statute is not whether the tort is precluded, but whether the statute adequately protects the public policy such that the tort claim is not necessary. *See Korslund*, 156 Wn.2d at 183. Since the remedies provided by the statute are comprehensive, the public policy is adequately protected and the public policy will not be genuinely threatened by dismissing Becker's tort claim.

Because I disagree with the analytical framework established in *Rose* and find that the adequacy of alternative remedies analysis is necessary to establish a claim for wrongful discharge in violation of public policy, I dissent. Becker cannot satisfy the jeopardy element of the tort because he cannot show that SOX is an inadequate

---

[4]The ERA—the statute examined in *Korslund*—contained a similar nonpreemption clause as in SOX. *See* 42 U.S.C. § 5851(h) ("This section may not be construed to expand, diminish, or otherwise affect any right otherwise available to an employee under Federal or State law."); *Korslund*, 156 Wn.2d at 182-83. This court found that nonpreemption clauses, like in the ERA, did not indicate that the statutory remedy was inadequate. *Korslund*, 156 Wn.2d at 183; *see Piel*, 177 Wn.2d at 617.

remedy to promote the alleged public policy. Congress established a comprehensive

statutory remedial scheme in SOX. The remedial scheme is adequate to protect the

public policy. I would dismiss Becker's claim and reverse the Court of Appeals.

Fairhurst, J.

Owens, J.

Madsen, C.J.

11