

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAR 0 9 2017

Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on March 9 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ALLAN A. TABINGO, | ) | |
| | ) | |
| Petitioner, | ) | No. 92913-1 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| AMERICAN TRIUMPH LLC, and | ) | |
| AMERICAN SEAFOODS COMPANY, | ) | |
| LLC, | ) | |
| | ) | Filed     MAR 0 9 2017 |
| Respondents. | ) | |
| | ) | |

OWENS, J. — Allan Tabingo was seriously injured while working aboard a fishing trawler owned and operated by American Seafoods Company LLC and American Triumph LLC (collectively American Seafoods). Tabingo alleges the lever used to operate a hatch in the trawler's deck broke when an operator tried to stop the hatch from closing. The hatch closed on Tabingo's hand, leading to the amputation of two fingers. He brought numerous claims against American Seafoods, including a general maritime unseaworthiness claim for which he requested punitive damages.

American Seafoods argued that as a matter of law, punitive damages are unavailable for unseaworthiness claims.

Unseaworthiness is a general maritime claim. Neither the United States nor the Washington State Supreme Court have ruled on whether punitive damages are available under this theory. However, the United States Supreme Court has recently held that punitive damages are available for maintenance and cure, another general maritime claim. The Court held that because both the claim and the damages were historically available at common law and because Congress had shown no intent to limit recovery of punitive damages, those damages were available. Here, we follow the United States Supreme Court's rationale and find that, like maintenance and cure, punitive damages are available for a general maritime unseaworthiness claim. We reverse the trial court and remand for further proceedings.

## FACTS

Allan Tabingo was a deckhand trainee aboard the fishing trawler *American Triumph*, owned and operated by American Seafoods. "Fishing trawlers" are vessels that catch and haul fish onto their decks using large nets. After the fish are aboard and dumped from the nets, one deckhand opens a steel hatch using hydraulic controls while another deckhand shovels the fish through the hatch for processing. Though deckhands can push most of the fish below decks with shovels, the design of the vessel requires them to get on all-fours and use their hands to move the final fish.

In February 2015, Tabingo was tasked with moving the fish below decks. He was on his knees near the hatch's hinge, gathering the last remaining fish, when another deckhand started closing the hatch. Realizing how close Tabingo's hands were to the hatch, the deckhand attempted to correct his mistake. However, the hatch's control handle was broken and the deckhand could not stop the hatch. The hydraulic hatch closed on Tabingo's hand, resulting in the amputation of two fingers. Tabingo alleges that American Seafoods knew about the broken handle for two years before the incident but had failed to repair it.

Tabingo filed suit against American Seafoods. He claimed negligence under the Jones Act (also known as the Merchant Marine Act of 1920 (46 U.S.C. § 30104)), as well as several general maritime claims, including one for unseaworthiness of the vessel. He requested compensatory damages against American Seafoods for all of his claims, and punitive damages for his general maritime claims, including his unseaworthiness claim.

American Seafoods filed a motion for partial summary judgment moving to dismiss Tabingo's punitive damages claim. It argued that Tabingo had not stated a claim for which relief could be granted under CR 12(b)(6), and asked that the trial court follow a recent Fifth Circuit case, *McBride v. Estis Well Serv., LLC*, 768 F.3d 382 (5th Cir. 2014) (plurality opinion), holding that punitive damages are disallowed in general maritime law cases. American Seafoods claimed that punitive damages are

prohibited under the Jones Act's provision for maritime negligence actions, and because the unseaworthiness claim was joined with a Jones Act negligence claim, punitive damages are barred for the unseaworthiness claim as well.

After oral argument, a King County Superior Court judge granted the motion for partial summary judgment on CR 12(b)(6) grounds. The judge found that, based on Washington and federal law, the measure of damages available in a Jones Act negligence claim and an unseaworthiness claim are identical. Because of this, the Jones Act circumscribes the damages available under the doctrine of unseaworthiness. The trial court ruled that a plaintiff may not seek nonpecuniary damages in either general maritime or negligence claims and, because punitive damages are nonpecuniary, dismissed Tabingo's punitive damages claim.

Tabingo filed a direct interlocutory petition for review with this court, which was granted. Ruling Granting Review, *Tabingo v. American Triumph, LLC*, No. 92913-1 (Wash. Jun. 28, 2016).

## ISSUE

Can a seaman request punitive damages under a general maritime unseaworthiness claim?

## STANDARD OF REVIEW

At issue here is a challenge to a motion to dismiss for failure to state a claim on which relief can be granted. CR 12(b)(6). The trial court may grant a CR 12(b)(6)

4

motion when the plaintiff can provide no conceivable set of facts consistent with the complaint that would entitle him or her to a relief. *Becker v. Cmty. Health Sys., Inc.,* 184 Wn.2d 252, 257-58, 359 P.3d 746 (2015) (citing *Corrigal v. Ball & Dodd Funeral Home, Inc.,* 89 Wn.2d 959, 961, 577 P.2d 580 (1978)). All allegations set forth by the nonmoving party are presumed to be true. *Kinney v. Cook,* 159 Wn.2d 837, 842, 154 P.3d 206 (2007). If it is possible that facts could be established to support relief, the motion will not be granted. *Kumar v. Gate Gourmet Inc.,* 180 Wn.2d 481, 488, 325 P.3d 193 (2014). A trial court's ruling to dismiss a claim under CR 12(b)(6) is a matter of law this court reviews de novo. *See Kinney,* 159 Wn.2d at 842. In addition, maritime actions brought in Washington courts "are governed by federal maritime law, both common law . . . and statutory." *Clausen v. Icicle Seafoods, Inc.,* 174 Wn.2d 70, 76, 272 P.3d 827 (2012).

1. *Claims for Unseaworthiness Predate the Negligence Claims Provided for under the Jones Act*

The general maritime claim for unseaworthiness has a long history. Historically, seamen had only two methods of recovery for personal injury suffered at sea: maintenance and cure, and unseaworthiness. *See Chandris, Inc. v. Latsis,* 515 U.S. 347, 354, 115 S. Ct. 2172, 132 L. Ed. 2d 314 (1995). Common law did not recognize a right to recover for the negligence of the owner of a ship, the ship's master, or other crew members. *Id.* While maintenance and cure has been available

for centuries, unseaworthiness arose as an independent cause of action in American maritime law in the 1870s.

Maintenance and cure has existed from at least the 13th century. *See The Osceola*, 189 U.S. 158, 169, 23 S. Ct. 483, 47 L. Ed. 2d 760 (1903) (citing the "Rules of Oleron," a medieval set of maritime laws and the first formal statement of maritime law in northwestern Europe); *see also Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 543-49, 80 S. Ct. 926, 4 L. Ed. 2d 941 (1960) (explaining the history of general maritime law claims in minute detail). Maintenance and cure is a ship owner's obligation to care for sick or injured seamen and to pay those seamen their wages "so long as the voyage is continued." *The Osceola*, 189 U.S. at 175. It includes food and lodging as well as medical treatment. *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 413, 129 S. Ct. 2561, 174 L. Ed. 2d 382 (2009).

Unseaworthiness, a broad category, arose as an independent cause of action in the United States beginning in the 1870s. *The Osceola*, 189 U.S. at 175 (noting a departure in English and American maritime law from European "Continental codes" beginning in 1876). The owner of a ship owes the crew of that ship a duty to provide a vessel fit to take to sea, which could even include the owner's selection of crew members. *See, e.g., The Rolph*, 299 F. 52 (9th Cir. 1924) (holding that the hiring of a physically abusive first mate can render a vessel unseaworthy). Unseaworthiness, though a separate claim, was initially influenced by negligence concepts. *See* 1B

BENEDICT ON ADMIRALTY § 23, 3-12 to 3-14 (Joshua S. Force ed., 7th rev. ed. 2014). This was because general maritime law did not provide for recovery on negligence claims against an employer who was also the owner of a seafaring vessel. *See The Osceola*, 189 U.S. at 159-60. To remedy this prohibition on negligence, Congress passed the Jones Act in 1920, creating causes of action for employer negligence in navigable waters. *See* 46 former U.S.C. § 688 (1920) (codified as amended at 46 U.S.C. § 30104). Thus, negligence and unseaworthiness claims are separate causes of action. BENEDICT ON ADMIRALTY, *supra*, § 23, at 3-14 to 3-15.

Though the limits of an unseaworthiness claim were still developing when Congress passed the Jones Act, unseaworthiness was open to seamen before the passage of the act in 1920. The language of the act initially led courts to reason that seamen had to choose between a Jones Act negligence claim and a common law unseaworthiness claim. *See id.* § 2, at 1-8. However, the United States Supreme Court has since declared that a seaman can bring both claims and recover under both theories in the same action. *Id.* (citing *McAllister v. Magnolia Petrol. Co.*, 357 U.S. 221, 78 S. Ct. 1201, 2 L. Ed. 2d 1272 (1958)).

2. *The United States Supreme Court's Rationale in* Townsend *Is Applicable Here*

Neither this court nor the United States Supreme Court has decided whether punitive damages are available for general maritime unseaworthiness claims. However, the United States Supreme Court has provided strong guidance for our

7

decision in this case. Because this is a case involving maritime law, the outcome is governed "by federal maritime law, both common law . . . and statutory." *Clausen,* 174 Wn.2d at 76; *see also Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222-23, 106 S. Ct. 2485, 91 L. Ed. 2d 174 (1986) (explaining that the "'saving to suitors'" clause of the Constitution preserves state courts' jurisdiction in some maritime cases, but also requires state decisions to conform to federal jurisprudence).

The United States Supreme Court has held that punitive damages may be available in general maritime actions. In *Atlantic Sounding Co.,* the Court found that a seaman could recover punitive damages from his employer's willful and wanton disregard for its maintenance and cure obligations. In that case, the plaintiff injured his shoulder while aboard his employer's vessel; he sued for maintenance and cure, seeking punitive damages. 557 U.S. at 411. The Court noted that the common law had long recognized punitive damages and that such damages extended to "claims arising under federal maritime law." *Id.* The *Townsend* Court noted further that nothing in maritime law prohibited the application of punitive damages in the maintenance and cure context. *Id.* at 412. The Court stated three points central to deciding whether punitive damages were available in general maritime actions: (1) "punitive damages have long been available at common law," (2) "the common-law tradition of punitive damages extends to maritime claims," and (3) "there is no evidence that claims for maintenance and cure were excluded from this general

admiralty rule." *Id.* at 414-15. The intent of the Jones Act was to protect seamen as "'wards of admiralty,'" and was designed "'to enlarge that protection, not to narrow it.'" *Id.* at 417 (quoting *The Arizona v. Anelich*, 298 U.S. 110, 123, 56 S. Ct. 707, 80 L. Ed. 1075 (1936)). Therefore, because the Jones Act was not an explicit federal prohibition, punitive damages were available under the general maritime maintenance and cure claim.

*Townsend* applies in this case. Tabingo seeks punitive damages for his unseaworthiness claim. As noted in *Townsend*, punitive damages have historically been available at common law and those common law punitive damages extend to general maritime law. The only question then is whether there is reason to believe that unseaworthiness is excluded from this "general admiralty rule." *Id.* at 415. We find it is not excluded.

As noted above, unseaworthiness claims were available in general maritime law before negligence claims were recognized. Because recovery for pure negligence was either totally unavailable or so limited as to be functionally inaccessible, courts began recognizing recovery based on unseaworthy conditions caused by negligence. *Mitchell*, 362 U.S. at 544-45 (discussing the evolution of American unseaworthiness doctrine). However, these unseaworthiness claims were not treated as negligence claims. Rather, the owner's duty to provide a seaworthy vessel was a duty separate from and in addition to other maritime duties. *The Osceola*, 189 U.S. at 175. A

seaman can recover for both negligence and unseaworthiness in the same action. *See* BENEDICT ON ADMIRALTY, *supra*, § 2, at 1-8.

The intent of the Jones Act was to protect seamen as wards of admiralty and to expand protections rather than limit them. *Townsend*, 557 U.S. at 417. Similar to maintenance and cure, neither the United States Supreme Court nor Congress has indicated that unseaworthiness should be excluded from the general admiralty rule. American Seafoods urges that the Jones Act prohibits recovery of punitive damages. However, because this statutory remedy was in addition to other, preexisting remedies in general maritime law, the Jones Act does not disturb the availability of punitive damages. *Id.* at 416.

As explained above, at common law punitive damages were available and common law remedies extended to general maritime law, and there is no reason to believe unseaworthiness has been excluded from this general maritime rule. Because this is a maritime case, this court follows federal maritime law. Therefore, we find that a request for punitive damages may be brought for a general maritime unseaworthiness claim.

3. *The* Townsend *Decision Indicates That* Miles *Is Not Controlling in This Case*

American Seafoods urges that *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S. Ct. 317, 112 L. Ed. 2d 275 (1990), should steer our reasoning in this case. However,

we decline to adopt that rationale here. Due to its own language and subsequent United States Supreme Court precedent, *Miles* does not control this case.

*Miles* limits its holding solely to wrongful death claims. In *Miles*, the mother of a dead seaman brought an unseaworthiness claim stemming from wrongful death and sought punitive damages. *Id.* at 21-22. The Court recognized that the "legislative judgment behind the Jones Act, [the Death on the High Seas Act], and the many state statutes" warranted the recognition of a general maritime wrongful death action. *Id.* at 24. However, because Congress had directly spoken to wrongful death recovery and explicitly limited it to pecuniary loss, the Court reasoned the damages for maritime wrongful death were limited as well. *Id.* at 31. It held that punitive damages, as nonpecuniary damages, were not available.

But this rule is limited only to particular types of claims. The Court noted that the Jones Act "evinces no general hostility to recovery under maritime law," and that the act "does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness." *Id.* at 29. This indicates the Court did not intend this limitation on damages to expand beyond the claims at issue in *Miles*. That case is limited to claims rooted in statute.

The United States Supreme Court also analyzed *Miles* in *Townsend*, determining that it has limited applicability in the general maritime context. While the Court stated that the "reasoning of *Miles* remains sound," it also noted that the

11

reasoning in *Miles* is not universally applicable. 557 U.S. at 420. Because the cause

of action in *Townsend* and the remedy sought were both "well established before the

passage of the Jones Act," and because Congress had not spoken directly to the issue,

punitive damages for maintenance and cure were appropriate. *Id.* at 420-21. The

*Miles* rationale did not apply. We use that same reasoning here. Claims for

unseaworthiness predate the Jones Act and are not based on a statutory remedy.

Further, as noted in *Townsend*, the Jones Act does not directly address damages for

general maritime claims. *Id.* at 420. There is no other indication that unseaworthiness

should be excluded from the general maritime rule. Because of this, *Miles* does not

restrict a general maritime claim for unseaworthiness.

Nonetheless, American Seafoods argues that we should follow the Fifth

Circuit's decision in *McBride v. Estis Well Service, LLC*, 768 F.3d 382 (5th Cir. 2014)

(plurality opinion), which articulates a limit on punitive damages for unseaworthiness.

In *McBride*, two living seamen and the personal representative of a deceased seaman

all brought unseaworthiness claims and Jones Act negligence claims, seeking both

compensatory and punitive damages. *Id.* at 384. The lead opinion for a fractured

court held that punitive damages were unavailable for all the plaintiffs. *Id.* at 391

(lead opinion for a 7-2-6 en banc decision). It followed *Miles*'s reasoning, noting that

because the Jones Act limits recovery of punitive damages for actions brought under

it, the same result must occur when a Jones Act claim and general maritime claim are

joined in the same action. *McBride*, 768 F.3d at 388-89. However, as discussed above, this rationale misinterprets both *Miles* and its interaction with *Townsend*. *Miles* is limited to tort remedies grounded in statute. Unseaworthiness is not such a remedy. Congress has not directly addressed the damages available for an unseaworthiness claim. Because of this, following *Townsend*, punitive damages for unseaworthiness have not been curtailed.

Absent an indication that a general maritime cause of action has been removed from the general maritime rule, common law remedies are still available. Therefore, we apply *Townsend*'s rationale and find that punitive damages are available for unseaworthiness claims.

### 4. *Washington Jurisprudence Suggests That Punitive Damages May Be Available Here*

Washington courts have not dealt squarely with this issue, but our jurisprudence suggests that punitive damages are available for unseaworthiness claims. Washington is one of only a few states that does not regularly provide punitive damages for egregious conduct. *Dailey v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 575, 919 P.2d 589 (1996). However, maritime actions brought in state courts "are governed by federal maritime law." *Clausen*, 174 Wn.2d at 76. Therefore,

federal law, rather than state law, governs whether punitive damages are available here. *Id.*

We briefly addressed the punitive damages question in *Clausen*. There, we noted that *Townsend* dealt with the availability of punitive damages in general maritime law. *Id.* at 80. We also noted that the Jones Act did not restrict the damages available under the common law. *Id.* Thus, "the statutory limitations [of the Jones Act] did not affect the types of damages recoverable under general maritime law, *such as* punitive damages in maintenance and cure actions." *Id.* (emphasis added). Though the parties did not directly challenge whether punitive damages could be recovered, the reasoning in *Clausen* indicates that punitive damages could be available under general maritime causes of action. *Id.* at 83-84. Because unseaworthiness is such a general maritime action, we now hold that plaintiffs may recover punitive damages for unseaworthiness claims.

*5. Federal Policy Provides Seamen Special Protection as Wards of Admiralty*

Finally, the policy of treating seamen with particular care suggests that seamen should be able to recover punitive damages under certain circumstances. Courts have historically identified seamen as "wards of the admiralty." *Harden v. Gordon*, 11 F. Cas. 480, 485 (C.C.D. Ma. 1823) (No. 6,047); *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 103, 64 S. Ct. 455, 88 L. Ed. 2d 561 (1944); *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355, 91 S. Ct. 409, 27 L. Ed. 2d 456 (1971). Common law provided

seamen special protection because they were "subject to the rigorous discipline of the sea, and all the conditions of [their] service constrain [them] to accept, without critical examination and without protest, working conditions and appliances as commanded by [their] superior officers." *Mahnich*, 321 U.S. at 103.

Allowing for punitive damages here is consistent with this policy of protecting seamen. The purpose of punitive damages is not to compensate a harmed party, but to serve as punishment and to deter others from engaging in similar conduct in the future. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492-93, 128 S. Ct. 2605, 171 L. Ed. 2d 570 (2008). Federal law indicates that punitive damages may be available for anything from reckless to malicious conduct. *Id.* at 493-94. Here, Tabingo alleges that American Seafoods knowingly maintained an unseaworthy vessel for two years before the incident. Taking his allegations as true, American Seafoods' conduct could fall into the realm of reckless or malicious behavior. As such, an award of punitive damages would punish American Seafoods, serve as an example for other ship owners, and maintain the law's historical treatment of seamen as special wards of admiralty.

The policy question we answer is whether punitive damages would help effectuate the goal of providing seamen with particular protection. Though the finder of fact is the one tasked with determining whether punitive damages are warranted, our jurisprudence and policy indicate that as a matter of law, punitive damages are not

barred. We hold that availability of punitive damages furthers the policy surrounding general maritime causes of action.

## CONCLUSION

We hold that a seaman making a claim for general maritime unseaworthiness can recover punitive damages as a matter of law. First, the rationale in *Townsend* indicates as such. Punitive damages are available in general maritime claims. Because there is no indication that unseaworthiness claims have been excluded from this general rule, punitive damages are available for unseaworthiness. Second, the *Miles* decision is limited to wrongful death actions. It is therefore inapplicable to unseaworthiness claims. Finally, recognizing the availability of punitive damages supports the policy of protecting seamen as wards of admiralty. Because of this, we reverse the trial court's partial dismissal and remand to that court for further proceedings consistent with this decision.

WE CONCUR: