Owen DAHL, Plaintiff,

v.

GLADSTONE TECHNOLOGY, PARTNERS, LLC, et al., Defendants.

CIVIL ACTION NO. 15–4252 (TO BE DOCKETED IN 15–3528 AND 15–4252)

United States District Court, E.D. Pennsylvania.

Signed 07/26/2017

John Duwors, Newman & Du Wors LLP, Seattle, WA, Sidney L. Gold, Valerie Weisman Burritt, Sidney L. Gold & Associates, PC, Philadelphia, PA, for Plaintiff.

Joseph Kernen, Brian J. Boyle, DLA Piper LLP, Philadelphia, PA, for Defendants.

## MEMORANDUM OPINION

Rufe, J.

Plaintiff Owen Dahl brings this diversity action against his former employers,[1] asserting claims for, *inter alia*, violations of Washington state law, tortious interference with contract, and shareholder oppression. Defendants have moved to dismiss four of eight counts in the Second Amended Complaint ("SAC"), arguing that the claims fail for the same reasons set forth in the Court's prior Memorandum Opinion granting in part Defendants' motion to dismiss. For the reasons stated below, Defendants' motion will be granted in part and denied in part.

## I. FACTUAL ALLEGATIONS [2]

On November 1, 2012, Dahl, a resident of Washington, contracted with Defendant Gladstone Technology, a Pennsylvania limited liability company in the business of developing computer software to be used in the financial services industry. Under the terms of the parties' service agreement, Dahl, a valuation expert, was to oversee the development and commercial release of a product called Gladstone Evaluation Index Software. In exchange, Gladstone Technology Partners promised him a 30% share of ownership in Gladstone.[3] No additional compensation was negotiated into the agreement.[4] However, Dahl was paid a minimal salary from October 2014 to April 2015.[5]

Dahl contends that Gladstone never issued the 30% share of stock as promised in

---

1. The Second Amended Complaint asserts claims against Gladstone Technology Partners, LLC ("Gladstone Technology"); Gladstone Associates, LLC, the 70% majority shareholder of Gladstone Technology; Daniel Kreuter, the Chairman of Gladstone Technology; and Paul Lally, the Chief Executive Officer of Gladstone Technology and President of Gladstone Associates. Gladstone has filed a separate action against Dahl, and the two cases have been consolidated.

2. For the purposes of the Motion to Dismiss, the factual allegations in the SAC are presumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Because the facts as stated in the SAC are identical to those alleged in the Amended Complaint, the factual background is drawn from the Court's August 26, 2016 Memorandum Opinion granting in part Defendants' Motion to Dismiss.

3. The service agreement states: "As compensation for the services to be rendered by Dahl hereunder, Dahl shall receive limited member units in Company (the "U[n]its") equaling approximately thirty (30%) percent of all the outstanding Units in the Company." *See* SAC, Ex. A.

4. Dahl attached the parties' service agreement to the SAC. The Court can consider this document on a motion to dismiss pursuant to *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

5. SAC ¶ 1.

the agreement and paid him "no salary" for his work between November 2012 and September 2014.[6] Instead, Dahl alleges that, pursuant to an I.R.S. form K–1 ("Partner's Share of Income, Deductions, Credits, etc.") Gladstone sent him in January 2015, he received only a 22.5% share of stock. Dahl asserts that he complained to both Defendant Kreuter, the Chairman of Gladstone Technology, and Defendant Lally, the CEO of Gladstone Technology, that he had not been paid his full 30% share. Dahl also alleges that he demanded inspection of Gladstone Technology's books and records, which Gladstone refused. Gladstone offered no explanation of its failure to issue the full 30% share of stock.

On May 28, 2015, Defendant Kreuter, in his capacity as Chairman of Gladstone Technology, LLC, notified Dahl by letter that his employment with Gladstone was being terminated "for Cause."[7] The letter also stated that, pursuant to the terms of the service agreement, the units of membership interest in the company previously issued to Dahl were forfeited back to the company.[8]

Dahl filed suit in the U.S. District Court for the Western District of Washington, after which the case was transferred to this Court and consolidated, by stipulation, with a case Gladstone had filed against Dahl in this Court.[9] Dahl then filed an Amended Complaint,[10] and Gladstone moved to dismiss. The Court granted Gladstone's motion in part, allowing four claims to proceed and granting leave to amend the dismissed claims of wrongful termination in violation of Washington public policy, tortious interference with contract, petition for judicial dissolution, and injunction for inspection of books and records. After Dahl filed the SAC, Defendants moved to dismiss the amended claims.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[11] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[12] Courts are not, however, bound to accept as true, legal conclusions couched as factual allegations.[13] Something more than a mere *possibility* of a claim must be alleged; rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its

---

6. *Id.*

7. *Id.*, Ex. B.

8. *Id.* ¶ 54.

9. The suit brought by Gladstone alleges, *inter alia*, breach of contract, breach of fiduciary duty, and unfair competition. *See* Civil Action No. 15–4252, Doc. No. 9.

10. The First Amended Complaint asserted claims for violation of Washington state wage law, violation of Pennsylvania's Wage Payment and Collection Law, breach of contract, wrongful termination in violation of Washington public policy, conversion, tortious interference with contract, shareholder oppression and petition for judicial dissolution, an injunction for the inspection of books and records, and a declaratory judgment.

11. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

12. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

13. *Twombly*, 550 U.S. at 555, 564, 127 S.Ct. 1955.

face." [14] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." [15] The court has no duty to "conjure up unpleaded facts that might turn a frivolous...action into a substantial one." [16]

## III. DISCUSSION

The service agreement at issue includes a choice of law and a choice of venue provision. The choice of law provision states that the agreement "shall be construed by the law of Pennsylvania for all purposes of conflicts of law." [17] The venue provision provides that any disputes "shall be heard" in either the Pennsylvania Courts of Common Pleas or the U.S. District Court for the Eastern District of Pennsylvania. As the Court noted in its August 26, 2016 Memorandum Opinion, the choice of law provision applies only to issues of contract interpretation, and not to all disputes between the parties. Accordingly, Dahl's statutory and public policy claims under Washington law are not precluded by the provision, and the Court need not engage in a choice of law analysis that would require it to weigh Pennsylvania's interest in the case against Washington's interest. [18]

### A. Count IV: Wrongful Termination in Violation of Washington Public Policy

Dahl alleges that his termination violates Washington public policy. Although employment in Washington is either contractual or "at-will," meaning either party may end the relationship for any reason, a claim may arise if an employee can demonstrate: "(1) the existence of a 'clear public policy' (clarity element), (2) whether 'discouraging the conduct in which [the employee] engaged would jeopardize the public policy' (jeopardy element), (3) whether the 'public-policy-linked conduct caused the dismissal' (causation element), and (4) whether the employer is 'able to offer an overriding justification for the dismissal' (absence of justification element)." [19] The policy at issue must be "legislatively or judicially recognized." [20] Moreover, "wrongful discharge claims have generally been limited to four scenarios: (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistle blowing." [21]

14. *Id.* at 570, 127 S.Ct. 1955.

15. *Id.* at 562, 127 S.Ct. 1955 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

16. *Id.* (quoting *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 42–43 (6th Cir. 1988)).

17. SAC, Ex. A ¶ 14.2.

18. *See DeLage Landen Fin Servs., Inc., v. Rasa Floors*, LP, No. 09-00533, 2009 WL 564627 at *11 n. 12 (E.D. Pa. 2009).

19. *Rose v. Anderson Hay & Grain Co.*, 184 Wash.2d 268, 358 P.3d 1139, 1143 (2015)

20. *Becker v. Cmty. Health Sys., Inc.*, 184 Wash.2d 252, 359 P.3d 746, 749 (2015) ("We maintain a strict clarity requirement in which the plaintiff must establish that the public policy is clearly legislatively or judicially recognized.").

21. *Id.*

Dahl asserts that he was terminated for exercising a legal right or privilege, namely that he complained to Defendants Lally and Kreuter about Gladstone's failure to issue him a 30% share in Gladstone Technology. In its previous decision, the Court noted that at least two elements of this cause of action—the clarity element and the causation element—were not properly pleaded. In the SAC, Dahl attempts to remedy this deficiency by adding, "Washington public policy protects the payment of wages, and protects employees exercising a legal right or privilege, such as complaining about the non-payment of wages."[22]

The SAC does not allege that the claimed policy, relating as it does in this case to a complaint about non-payment pursuant to a contractual agreement, is "grounded in the constitution, a statute, or a prior court decision" as required under Washington law,[23] nor does it allege that the public policy-linked conduct caused his termination. Accordingly, at least two of the elements necessary to sustain a claim for violation of public policy, the clarity and causation elements, remain absent. The claim will be dismissed.

## B. Count VI: Tortious Interference with Contract

Under Pennsylvania law, to prevail on a claim for tortious interference with existing contractual relationships, a plaintiff must prove: "1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; 2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relationship from occurring; 3) the absence of privilege or justification on the part of the defendant; and 4) legal damage."[24]

Dahl alleges that Gladstone Associates, Kreuter, and Lally intentionally interfered with his performance under the service agreement when they refused to issue the agreed-upon shares.[25] The Court noted in its August 26, 2016 Memorandum Opinion that, while Dahl alleged "the absence of privilege or justification" with respect to the rescinding of shares in pleading a conversion claim, he did not state the same allegation for the tortious interference with contract claim. Thus, the Court allowed the conversion claim to proceed to discovery but found the tortious interference failed as a matter of pleading. In the SAC, Dahl has added that Defendants intentionally refused to issue the agreed-upon shares in the absence of privilege or justification because Dahl had "performed all duties required of him and all conditions precedent were met[.]"[26] Additionally, although the service agreement states that the agreement may be terminated, and Dahl's shares rescinded, "for 'cause,'"[27] Dahl alleges that "Defendants

22. SAC ¶ 81.

23. *Roberts v. Dudley*, 140 Wash.2d 58, 993 P.2d 901, 905–06 (2000), *as amended* (Feb. 22, 2000).

24. *Acumed LLC v. Advanced Surgical Serv.*, 561 F.3d 199, 212 (3d Cir. 2009).

25. The service agreement was entered into by Dahl and Gladstone Technology. Although Defendants briefly raised the argument that Gladstone Technology is not a third party for purposes of pleading a tortious interference with contract claim in their prior motion to dismiss, Defendants did not renew the argument in the most recent round of motion practice and therefore the Court will consider Gladstone Technology a third party for purposes of this claim.

26. SAC ¶ 98–99.

27. *Id.* Ex. A, ¶ 10.2.

had no cause to terminate" him.[28] Accordingly, Dahl has sufficiently alleged that Defendants interfered with the contract without legal privilege or justification, and discovery will be permitted on his tortious interference with contract claim.

## C. Count VIII: Shareholder Oppression and Petition for Judicial Dissolution

A member in a Pennsylvania LLC may petition a court for an order dissolving the company if "it is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement."[29] Dahl seeks an order from this Court to dissolve Gladstone Technology because "Defendants oppressed Dahl from exercising his rights and fulfilling his duties as a 30% shareholder in Gladstone Technology" and "it is no longer practicable to carry on the business of the LLC in conformity with the Operating Agreement."[30]

Dahl alleges that "Gladstone Technology is, and at all relevant times hereto was, a Pennsylvania limited liability company," and that, by virtue of his ownership of Gladstone shares, he was a member of Gladstone.[31] Dahl has added in the SAC the allegation that, pursuant to the services agreement dated November 1, 2012 (which is attached to the SAC), "he agreed to be bound by the terms of the Gladstone

Technology Limited Liability Company Operating Agreement...as a partner in Gladstone Technology."[32] Although the services agreement does not identify Dahl as a partner, it states that Dahl will receive "limited member units" in Gladstone Technology.[33] Thus, based on the allegations in the SAC and the terms of the service agreement, Dahl has sufficiently pleaded that he is a member of Gladstone Technology who has a statutory right to petition the Court for dissolution. Accordingly, this count will proceed to discovery.

## D. Count IX: Injunction for the Inspection of Books and Records

Under Pennsylvania's Limited Liability Company Act, LLC members have a statutory right to inspect partnership books.[34] Dahl claims that he asked to inspect Gladstone Technology's books and records but was denied access. Dahl alleges in the SAC that he agreed to be bound by the terms of the Gladstone Technology Limited Liability Company Operating Agreement as a partner in Gladstone Technology, that his responsibilities as such included "securing certain financing and managing the technological development of the Analytics Software,"[35] and that, because of his status as a partner, Defendants had a duty to permit him to inspect the books and records.[36] Because Dahl has plausibly alleged that he was a member of Gladstone Technology, he has

28. *Id.* ¶ 53.

29. *See* 15 Pa. C.S. § 8871(a)(4)(ii).

30. SAC ¶¶ 104, 107.

31. *Id.* ¶¶ 7, 24.

32. *Id.* ¶ 102.

33. *Id.* Ex. A, ¶ 6.2.

34. *Ignelzi v. Ogg, Cordes, Murphy and Ignelzi, LLP.*, 78 A.3d 1111, 1113 (Pa. Super. 2013);

15 Pa. C.S.A. § 8446(b) ("On reasonable notice, a partner may inspect and copy during regular business hours, at a reasonable location specified by the partnership, any record maintained by the partnership regarding the partnership's business, financial condition and other circumstances.").

35. SAC ¶ 113.

36. *Id.* ¶ 114.

also plausibly alleged a statutory right to inspect the company's books and records. Thus, this claim will proceed to discovery.

## IV. CONCLUSION

For the reasons set forth herein, the Motion to Dismiss will be granted as to Count IV, Wrongful Termination in violation of Washington Public Policy.[37] The Motion to Dismiss will be denied as to Count VII, Tortious Interference with Contract; Count VIII, Shareholder Oppression; and Count IX, Injunction for Inspection of Books and Records. An appropriate order follows.

---

**37.** Plaintiff has had three opportunities to plead his claims, and has not requested a fourth. Accordingly, because multiple attempts to remedy deficiencies have been unsuccessful, the Court finds that amendment would be futile. Dismissal of Plaintiff's claim will be with prejudice. *See Haberle v. Officer Daniel Troxell*, No. 5:15-CV-02804, 2016 WL 1241939, at *1 (E.D. Pa. Mar. 30, 2016) (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)) ("While leave to amend must be afforded even when not requested, that is not the case when amendment would be futile.").