**Gordon E. WRIGHT, Plaintiff–Appellant,**

v.

**Marvin RUNYON,\* Postmaster General, Defendant–Appellee.**

No. 92–3490.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1993.

Decided Aug. 10, 1993.

---

\* Marvin Runyon is substituted for his predecessor, Anthony Frank, as Postmaster General. Fed.

R.App.P. 43(c)(1).

Brian W. Gleason (argued), Milwaukee, WI, for plaintiff-appellant.

Mel S. Johnson, Asst. U.S. Atty. (argued), Milwaukee, WI, for defendant-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and ALDISERT, Senior Circuit Judge.**

CUDAHY, Circuit Judge.

Gordon Wright was an employee of the United States Postal Service (USPS) from October 1971 until May 1987. For most of that time he was a member of the Seventh Day Adventist Church. Seventh Day Adventists observe their Sabbath from sundown Friday until sundown Saturday, and during that time they must refrain from any employment activities. Wright contends that he was forced to resign his position because the USPS failed reasonably to accommodate his religious practices in violation of Title VII of the Civil Rights Act of 1964. The district court granted summary judgment in favor of the Postmaster General. Wright appeals, and we, reviewing the district court's decision *de novo,* now affirm.

Wright began his tenure with the USPS as a letter sorter in the Milwaukee Main Post Office. In 1980, he transferred to a box sorter position in the box unit, which did not require him to work on his Sabbath. On April 29, 1987, the USPS sent Wright a letter informing him that his position in the box unit was being abolished effective May 22, 1987. That same letter stated that Wright would have an opportunity to bid for a new

** Hon. Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit is sitting by designation.

position in a special "closed bid" procedure.[1] Although none of the positions offered in the closed bid process accommodated Wright's religious practices, four positions were let for bid in the ordinary process that did not require work during Wright's Sabbath. Wright would have received at least two of these positions, as the senior bidder, had he bid for them.[2] Wright, however, bid only for the others and received none of them. He thus became, in USPS lingo, an "unassigned regular," whom the USPS could assign to any vacant position. And, as it happened, Robert Rudolph, Wright's supervisor, informed Wright on May 29, 1987, that he had been assigned to a box unit position that required work on Friday evenings.

Wright immediately informed Rudolph that he would have to resign if he were required to work Friday·nights. Rudolph merely reiterated that Wright was assigned to a position with Tuesdays and Wednesdays off and that he would have to report to work that night, which happened to be a Friday. Wright then proceeded to complete a resignation form on which he indicated that he was quitting because of the "United States[s]

Postal Services['s] refusal to continue giving me my Sabbath off (Friday Sundown to Saturday sundown)." Wright gave the form to Rudolph who accepted it without much further discussion.[3] Rudolph signed the form and presented it to his immediate supervisor, Tom Gapinski, who in turn sent it to the personnel office. Wright's later request for reinstatement was denied.

■ Title VII requires that certain agencies of the federal government, including the USPS, make employment decisions "free from any discrimination based on ... religion." 42 U.S.C. § 2000e–16(a). "Religion" is defined, however, to include only those "aspects of religious observance and practice" that an employer is able to "reasonably accommodate ... without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). The only question before us is whether the USPS failed to accommodate reasonably Wright's refusal to work, as a matter of religious conviction, from sundown Friday until sundown Saturday.[4] We conclude that it did not.

1. This "closed bid" procedure was merely a variation of the "bid assignment system" in effect throughout Wright's tenure at the USPS pursuant to the collective bargaining agreement between the USPS and the American Postal Workers Union. Under both procedures, work positions were assigned to the bidding employee with the most seniority. But unlike the ordinary bid assignment system, which is open to all employees, only employees whose positions were being eliminated could participate in the "closed bid."

2. The district court mistakenly classified the positions that Wright would have received had he bid for them as part of the closed bid procedure. In reality, they were part of the open bid process, in which any postal employee could participate. Wright suggests that this is a "critical factual error." Wright's Br. at 42. But we agree with the USPS that it is insignificant because Wright would have received them in any event.

3. The USPS maintains that Rudolph offered Wright the opportunity to take the next day off to reconsider his decision and that Wright declined the offer. Wright contends that Rudolph never offered him a day off. But Wright does not contest that Rudolph remembers saying, "Gordie, are you sure you want to do this? Don't you want to think about it for a day or so." R.O.A. 32 at 35 (deposition of Robert L. Rudolph). Considering the procedural posture of this case, we accept as true Wright's contention that Rudolph

never formally offered Wright the option of taking off the evening of May 29. We note, however, that even according to Wright's version of the events of May 29, 1987, Rudolph suggested that Wright take a day off to think about his decision to resign. Since Wright regularly invoked the hardship provision of the collective bargaining agreement in order to obtain time off for religious observances, this suggestion alone should have caused Wright to think that he could avoid the immediate conflict between his work obligations and religious practices by some means other than quitting.

4. In order to establish a prima facie case of religious discrimination, Wright must show that (1) a bona fide religious practice conflicts with an employment requirement, (2) he brought this practice to his employer's attention, and (3) the religious practice was the basis for his discharge. *Beasley v. Health Care Serv. Corp.*, 940 F.2d 1085, 1087 (7th Cir.1991). The record contains abundant evidence that Wright satisfied the first two elements. But because Wright quit his job, there may be some doubt that he was disciplined, much less discharged, on account of his religious practices. The district court concluded that the doctrine of "constructive discharge" applied to this case. Finding that Wright could "reasonably infer" that he would be disciplined for refusing to work during his Sabbath, the district court concluded that Wright had made out a prima

[2] A reasonable accommodation of an employee's religion is one that "eliminates the conflict between employment requirements and religious practices...." *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 70, 107 S.Ct. 367, 373, 93 L.Ed.2d 305 (1986). The district court concluded that "the Postal Service accommodated Wright by inviting him to bid on four open 'weekends off' positions, at least two of which Wright would have received had he bid on them." *Wright v. Frank,* No. 88–C–1316, slip op. at 17, 1992 WL 521773 (E.D.Wis. Jan. 21, 1992). We agree. The bidding system enabled Wright to obtain a job the requirements of which did not interfere with his religious practices. Indeed, it allowed Wright to *select* such a position. This strikes us as a paradigm of "reasonable accommodation." Wright, in refusing to bid on two "flat sorter machine operator" jobs that would not have required work during his Sabbath, chose not to take full advantage of the bidding system. Wright, not the Postmaster General, is therefore responsible for the consequences.

Wright argues that the bidding system was not a reasonable accommodation because the "flat sorter" jobs were "nonpreferrable positions ... which were not commensurate with his seniority." Wright's Br. at 38. Wright does not explain what jobs would have been "commensurate with his seniority," but he suggests that only his previous (box unit) job, or some position of nearly identical desirability, would fill the bill. Title VII, however, requires only "reasonable accommodation," not satisfaction of an employee's every desire. We would be presented with a different question if Wright were a skilled craftsman asked to assume an unskilled position. But, in terms of requisite skills, the flat sorter and box positions are essentially equivalent. A much more searching inquiry might also be necessary if Wright, in order to accommodate his religious practices, had to accept a reduction in pay or some other loss of benefits. But that is not this case. Wright simply had to take a job that most people did not want. When jobs more palatable to Wright's tastes became available, he could presumably bid on them, his seniority intact following his interregnum in the flat sorter section.[5] We have previously stated that "[i]t is difficult for any organization to accommodate employees who are choosy about assignments...." *Ryan v. United States Dep't of Justice,* 950 F.2d 458, 462 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). The facts here tend to confirm that observation.

■ Finally, Wright contends that even if the bidding system itself was a reasonable accommodation, the USPS still should have done more. To this end, Wright recites a host of other means by which his religious practices might have been at least temporarily accommodated without undue hardship to the USPS. Wright's Br. at 35–37. The Supreme Court has instructed that "where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternatives would result in undue hardship." *Philbrook,* 479 U.S. at 68, 107 S.Ct. at 372. The USPS here has taken adequate steps to accommodate Wright's religious practices. Not only was the bidding process itself a reasonable accommodation, but Rudolph also suggested to Wright that he think about some of his other options before submitting his resignation. The USPS admittedly did not investigate every possible way in which Wright could avoid a conflict between his work requirements and his religious practices. But, by providing at least one reasonable accommodation, the USPS discharged its obligations. *Id.* at 69, 107 S.Ct. at 372.

We are not without sympathy for employees trapped between their jobs and deeply held religious beliefs. Religious faith is ordinarily consistent with most employment obligations. When the two conflict, Congress has ordered that employers must try to accommodate their employees' religious prac-

---

facie case. *Wright v. Frank,* No. 88–C–1316, slip op. at 16, 1992 WL 521773 (E.D.Wis. Jan. 21, 1992). The USPS does not challenge this point on appeal and, therefore, we need not address it.

5. Wright points out that in any 90 day period an employee would "get at least three opportunities to bid for a job." Wright's Br. at 28.

**218**

tices. Perhaps there were other steps that could have been taken here that would have allowed Wright to continue working at the USPS without infringing his religious convictions. We believe, however, that the USPS has done all that Title VII requires and, therefore, that it is entitled to summary judgment.

AFFIRMED.