**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**September 20, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ADELINA GABRIELA SUAREZ, | ) | |
| | ) | No.  38381-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE STATE OF WASHINGTON, | ) | PUBLISHED OPINION |
| TAMMY WINEGAR and her community | ) | |
| property, JULIANNE MOORE and her | ) | |
| community property, and TAMMY | ) | |
| MASTERS and her community property, | ) | |
| | ) | |
| Respondents. | ) | |

STAAB, J. — Adelina Suarez sued her former employer, Yakima Valley School (School), alleging the School failed to accommodate her religious beliefs and practices in violation of the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, and terminated her employment in violation of public policy.  Suarez contends that her work schedule conflicted with her practice of observing a weekly Sabbath and several religious festivals throughout the year.  She contends that when she told the School about this conflict, the School failed to accommodate her beliefs and practices, and when she failed to report to work while exercising her beliefs, the School terminated her employment.

No. 38381-4-III
*Suarez v. State*

She appeals the superior court's order on summary judgment dismissing all of her claims against the School.

We reverse summary judgment dismissal of Suarez's statutory claim for failure to accommodate her religious beliefs and her tort claim for discrimination in violation of public policy. We hold that a "reasonable accommodation" is one that resolves the conflict between an employee's religious beliefs and their work duty without adverse impact on their job benefits or status. While an employer is excused from providing an accommodation that will cause undue hardship, for purposes of this case, we adopt the definition of "undue hardship" provided in WAC 82-56-020.

On this record, there are genuine issues of material fact as to whether the School provided a reasonable accommodation to eliminate the conflict with Suarez's weekly Sabbath, and whether accommodating Suarez's leave request to observe her religious holiday caused the School undue hardship. In addition, we find that Suarez has produced evidence sufficient to show a prima facie case of discrimination in violation of public policy and summary judgment on this claim was also improper. While we affirm the dismissal of Suarez's statutory claim for discrimination and retaliation, we reverse dismissal of her statutory claim of failure to accommodate and her tort claim of discharge in violation of public policy.

No. 38381-4-III
*Suarez v. State*

BACKGROUND

Because the court granted the School's motion for summary judgment, we consider the following facts in a light most favorable to Suarez as the nonmoving party. Yakima Valley School is a certified residential nursing facility in Yakima that serves vulnerable, disabled adults. The School is administered by the Department of Social and Health Services' (Department), Developmental Disabilities Administration and offers medical and therapeutic services. As a residential nursing facility for vulnerable adults, the School is staffed 24 hours a day, seven days a week. There are three shifts in a 24-hour period, the day shift, the swing shift, and the night shift. At least 21 certified nursing assistants (CNAs) must be present to staff the night shift adequately. To ensure the School has necessary coverage each day for each shift, the School hires CNAs for a particular schedule. Each position has specific work hours and work days. Supervisors cannot change the schedule or days off for a specific job.

Adelina Suarez is a Christian who observes Saturdays as the Sabbath and celebrates seven religious' holidays throughout the year called the Feasts of God. These holidays coincide with the Holy Days recognized by the Jewish faith. According to Suarez's religious belief, she is commanded not to work on the weekly Sabbath or religious holidays.

In 2018, Suarez was trained as a CNA and applied for a position with the School. During the hiring process, Suarez informed the School of her religious beliefs and that

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38381-4-III
*Suarez v. State*

she did not wish to work on Saturdays. When she applied, Suarez was told that there were no positions with Fridays and Saturdays off, but she could request a schedule change after working for some time. Suarez accepted a night shift position that worked Wednesday through Sunday, from 10:00 p.m. to 6:30 a.m., with Mondays and Tuesdays off starting October 8, 2018.

Employees at the School, including CNAs, are unionized, and the terms and conditions of their employment are governed by a collective bargaining agreement. Employees submit vacation and leave requests early in the year and these are granted based on seniority and staffing needs. To maintain adequate staffing, the collective bargaining agreement allows prescheduled leave for only one night-shift CNA at a time. In addition to vacation days, sick time, and holidays, the collective bargaining agreement provides each employee with two unpaid holidays for a reason of faith or conscience. The collective bargaining agreement requires at least 14 days advanced notice of the request for religious holidays and may be denied for undue hardship.

When an employee accepts a job, they are on probationary status for 12 months. During that time, the employee is not covered by the progressive discipline procedures of the collective bargaining agreement. Permanent employees can bid on different positions with different shifts and work days. Bidding for jobs is based on a seniority system under the collective bargaining agreement. Only permanent employees outside their probationary period can bid on different jobs. If a job does not receive bids from a

4

No. 38381-4-III
*Suarez v. State*

permanent employee, the position is opened to probationary employees who may apply

for the open position. Shifts that do not work on Saturdays are more popular.

The position Suarez accepted was classified as an "emergent" position. Under the

collective bargaining agreement, the School could require an emergent employee to

report for duty on short notice within a specific timeframe outside of normally scheduled

work days and hours. In addition, the collective bargaining agreement allows the School

to require staff to work mandatory overtime under certain circumstances. The collective

bargaining agreement allows a staff member to refuse mandatory overtime up to two days

per quarter.[1] Suarez refused mandatory overtime on more days than allowed by the

collective bargaining agreement for three of the four quarters she worked for the School.

She was counseled on these refusals and advised that refusing mandatory overtime could

result in additional disciplinary action, including dismissal.

Suarez declared that after she began working for the School, she requested a

schedule change several times. Suarez explained to her supervisors that her religious

beliefs were important and that her work schedule conflicted with the Sabbath and

religious holidays. Although Suarez was working nights, it was difficult for her to work

all night and attend church services all day Saturday and then work all night Saturday.

---

[1] Prior to July 1, 2019, the collective bargaining agreement allowed staff to refuse
mandatory overtime one time per quarter.

5

No. 38381-4-III
*Suarez v. State*

While her requests to change her schedule were denied, the School allowed Suarez to take five days of unpaid leave for religious holidays in April 2019.

In September 2019, a CNA position on swing shift (1:45 p.m. to 10:15 p.m.) opened at the school with Fridays and Saturdays off. The position did not receive any bids from permanent employees and was opened to probationary employees. The position was posted and emailed to all Department staff. An employee with less seniority than Suarez applied for and was hired for this position. Because the employee was also a probationary employee when she was hired for the new job, the employee's 12-month probationary period started over.

Suarez did not apply for this position. In her declaration, Suarez indicated that she did not know she needed to apply for a new position to get a different schedule. Nor did her supervisor tell Suarez about the open position with Fridays and Saturdays off or tell Suarez how to apply for a job with Fridays and Saturdays off. She does not explicitly deny receiving the email sent to all employees with notice of the job opening. Nor does she specifically claim that had she been told about this position, she would have applied for it.

On September 8, 2019, Suarez requested four days of paid time off to attend religious festivals. Specifically, she requested leave on September 28, September 29, October 5, and October 6. Because another CNA had already scheduled to take leave on those days, Suarez's request was denied.

6

No. 38381-4-III
*Suarez v. State*

On September 13, Suarez's supervisor told Suarez that if she wanted unpaid leave on those days, she would need to speak to the appointing authority, superintendent Tammy Winegar, and gave Suarez Wingear's contact information. On September 27, Suarez contacted and emailed Winegar to request six days of unpaid leave for September 28, 29, and October 12, 13, 19, and 20. Although she had previously been approved for five days of leave for religious reasons, the appointing authority authorized four more days of leave for October. Suarez's unpaid leave request for the next two days, September 28 and 29, were denied because of staffing shortages and short notice.

Suarez reported for work on September 28. At 4:00 p.m. on September 29, a few hours before her shift began, Suarez called the School and said she would not be coming to work that day because she was at a church function.

On September 29, the School needed a minimum of 21 staff members to provide support safely. Ordinarily, the School scheduled 24 staff positions for the night. However, there were four vacant positions at the time. In addition, one CNA was prescheduled for leave per the collective bargaining agreement, and three other CNAs called in as "unavailable."[2] Clerk's Papers (CP) at 230-31.

In her deposition, Tammy Masters, the School's CR 30(b)(6) witness, testified that the School has "several call-ins every night," and there is a process for covering those

---

[2] The record does not indicate a specific reason that the employees were unavailable.

7

No. 38381-4-III
*Suarez v. State*

shifts. CP at 234. First, the School calls on a pool of employees who have volunteered for overtime. Then the School calls around the campus asking for volunteers. And if this is insufficient, they utilize the mandatory overtime list. Suarez testified that she was frequently called in to work mandatory overtime when "someone called in sick or did not show up to their shift." CP at 247. On September 29, the day Suarez failed to show up for work, a total of six staff members worked overtime, and one was required to work mandatory overtime.

Shortly after Ms. Suarez missed her shift on September 29, the Department gave her notice that her probationary employment was ending effective October 4, 2019. The Department ended her probationary employment because she had a history of refusing mandatory overtime without justification and she elected to not show up when she knew the facility would be short-staffed without her.

Suarez filed suit against the School, alleging violations of the WLAD, ch. 49.60 RCW, and a tort claim for wrongful discharge in violation of public policy. Following discovery, both parties filed competing motions for summary judgment. The superior court denied Suarez's motion and granted the School's motion, dismissing all of Suarez's claims. Suarez appeals the superior court's order granting the School's motion for summary judgment and dismissing her claims.

No. 38381-4-III
*Suarez v. State*

## ANALYSIS

### 1. ISSUES PRESERVED FOR APPEAL

As a preliminary matter, we must determine which issues Suarez has preserved for appellate review. In her complaint, Suarez pleaded three statutory claims: adverse action, retaliation, and failure to accommodate. She also pleaded a tort claim of termination in violation of public policy. On appeal, the School argues that Suarez waived several of her claims by failing to plead them in her complaint or argue them below.

In responding to the School's motion to dismiss all of her claims on summary judgment, Suarez argued there were sufficient factual issues to preserve two of her claims: "Here, in the light most favorable to Suarez the Defendants discriminated against Suarez by (1) failing to accommodate Suarez's religious practice and (2) firing Suarez for practicing her religion." CP at 286-87. Within her briefing, Suarez challenged her termination as only a violation of public policy. While the public policy that she claims was violated is the WLAD, she did not argue that her termination was a direct statutory violation. Nor did she raise any argument or facts on her retaliation claims. *See* CP at 281-92. The trial court dismissed all of Suarez's claims on summary judgment.

On appeal, Suarez's first issue is that the trial court erred in dismissing her statutory claim of failure to accommodate her religious beliefs. In her second issue, Suarez raises two more statutory claims asserting that the trial court erred in dismissing her claims of discrimination and retaliation in violation of the WLAD. Appellant's

9

No. 38381-4-III
*Suarez v. State*

Opening Br. at 14.  The State argues that Suarez waived the statutory discrimination and retaliation claims when she failed to assert them below.  Br. of Resp't at 19, 35.  We agree.

The general rule is that issues not raised before the trial court cannot be raised for the first time on appeal.  RAP 2.5; *Herberg v. Swartz*, 89 Wn.2d 916, 925, 578 P.2d 17 (1978).  More specifically, under RAP 9.12, "the appellate court will consider only evidence and issues called to the attention of the trial court."  This rule aims to ensure that an appellate court reviewing an order on summary judgment engages in the same inquiry as the trial court.  *Wash. Fed'n of State Emps., Council 28 v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 157, 849 P.2d 1201 (1993).

Here, Suarez did not assert any argument or present evidence to support her statutory claims of discrimination (disparate treatment) or retaliation to the superior court.  As such, she has waived these claims on appeal.  Like the trial court, we will only review Suarez's claims of failure to accommodate under the statute and her tort claim of discrimination in violation of public policy.

2.  FAILURE TO ACCOMMODATE

The first issue preserved by Suarez is whether genuine issues of material fact preclude the dismissal of her statutory claim for failing to accommodate her religious beliefs.  We review the trial court's order on summary judgment de novo.  *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).  Evidence is considered in a light

10

No. 38381-4-III
*Suarez v. State*

most favorable to the nonmoving party. *Id.* Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* A fact is "material" if it affects the outcome of the issue before the court. *Id.* at 370 n.8. "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* at 370.

Summary judgment is appropriate when a plaintiff fails to raise a genuine issue of material fact on one or more of the prima facie elements of a WLAD claim. *Gibson v. Costco Wholesale, Inc.*, 17 Wn. App. 2d 543, 556, 488 P.3d 869, *review denied*, 198 Wn.2d 1021, 497 P.3d 391 (2021). WLAD is intended to eliminate and prevent discrimination in the workplace. RCW 49.60.010. To effectuate this remedial purpose, the chapter should be construed liberally. RCW 49.60.020. While the WLAD explicitly provides several causes of action for discriminatory treatment, our State Supreme Court has also recognized an implicit right to religious accommodations under the WLAD. *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 501, 325 P.3d 193 (2014).

> [A] plaintiff establishes a prima facie claim of failure to accommodate religious practices by showing that (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment.

11

No. 38381-4-III
*Suarez v. State*

*Id.* Once established, an employer can defend the action by showing that it offered the employee a reasonable accommodation or that the accommodation would cause undue hardship to the employer. *Id*. at 502.

Suarez contends that the School failed to accommodate her religious beliefs in two ways: (1) by failing to accommodate her need for time off to observe religious holidays, and (2) by failing to accommodate her need for Saturdays off to observe her Sabbath. The School does not admit to discrimination, but for purposes of summary judgment, the School focuses on its defenses and contends that it either provided reasonable accommodations or rejected proposed accommodations that would cause an undue hardship. To address these issues, we need to define "reasonable accommodation" and "undue hardship."

Besides *Kumar*, there are no Washington cases interpreting or applying the recently recognized right to religious accommodations. In *Kumar*, the court looked to federal law as persuasive in developing the state right to religious accommodations. Although the court did not affirmatively define the term "reasonable accommodation," it did recognize that "a 'reasonable accommodation' need not be the precise accommodation the employee requests, even if the employer could provide that accommodation without suffering any undue hardship." *Kumar*, 180 Wn.2d at 502 (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986)). Federal courts have generally defined a "reasonable accommodation" as

12

No. 38381-4-III
*Suarez v. State*

one that resolves the conflict between an employee's work duties and religious beliefs.

*See Ansonia*, 479 U.S. at 70. In addition, some courts have held that a reasonable

accommodation must not impact the employee's benefits or status. See Dallan F. Flake,

*Restoring Reasonableness to Workplace Religious Accommodations*, 95 WASH. L. REV.

1673, 1715 (2020).

In *Ansonia*, a teacher's religious beliefs required him to refrain from performing

secular work on six designated Holy Days. The school's collective bargaining agreement

allowed teachers to take up to three days of paid leave each year to observe mandatory

religious holidays. Beyond that, the teacher could take unpaid leave. The bargaining

agreement also provided three days of paid personal days that could be used for purposes

not otherwise specified in the contract. After the teacher's request to use his paid

personal days for religious purposes was rejected, the teacher filed suit alleging failure to

accommodate.

The United States Supreme Court held that an employer has an obligation to

provide a reasonable accommodation, but not necessarily the accommodation preferred

by the employee. *Ansonia*, 479 U.S. at 68. Once an employer is found to have provided

a reasonable accommodation, the inquiry stops, and there is no need to show that

alternative accommodations requested by the employee would cause an undue hardship.

*Id*. at 68-69.

13

No. 38381-4-III
*Suarez v. State*

Ultimately, the Court remanded the case for further factual findings on whether the school's leave policy constituted a reasonable accommodation. In doing so, the Court noted that generally a policy of allowing a teacher to take unpaid leave for holidays in excess of the leave granted by the collective bargaining agreement would be a reasonable accommodation because it "eliminates the conflict between employment requirements and religious practices by allowing the individual to observe fully religious holy days and requires him only to give up compensation for a day that he did not in fact work." *Id*. at 70. The Court further noted that unpaid leave did not affect the employee's employment opportunities or job status. *Id*. at 70-71. However, the Court cautioned that if the benefit of paid personal days was provided in a discriminatory manner, i.e., available for any purpose except a religious holiday, then it was being applied in a discriminatory manner. *Id*. at 71.

*Ansonia* was cited with approval by our Supreme Court in *Kumar*, 180 Wn.2d at 502, and we find its reasoning persuasive. We adopt the federal definition and hold that a "reasonable accommodation" is one that resolves the conflict between the employee's work duties and religious beliefs and does not impact their benefits or job status.

Suarez asserts that her need to observe several religious holidays throughout the year conflicted with her work schedule. She declared that she told the School about this conflict, and the School failed to accommodate her religious beliefs by granting her leave for every holiday. The collective bargaining agreement provided each employee with

14

No. 38381-4-III
*Suarez v. State*

two days of unpaid leave to observe religious holidays.[3]  Under the agreement,

employees wishing to utilize their religious holidays must notify their supervisor in

writing at least 14 days in advance of their intent to take unpaid leave for purposes of

faith.  The collective bargaining agreement requires the employer to grant the leave

request unless it would impose an undue hardship as defined by chapter 82-56 WAC.

On this appeal, we do not decide whether two days of unpaid leave is a reasonable

accommodation for seven religious holidays because the School does not make this

argument.  Instead, the School responds that it attempted to accommodate Suarez's

religious holidays, even granting her more leave than the collective bargaining agreement

allowed.  But the School contends that granting Suarez leave on September 29 would

have caused an undue hardship.  Suarez disputes this assertion.  She contends that

employees frequently called in as unavailable for several reasons, and the School had a

procedure for covering those shifts, including requiring employees to work mandatory

overtime as provided in the collective bargaining agreement.  Before deciding this issue,

we must define "undue hardship."

---

[3] This provision mirrors RCW 1.16.050(3), which grants certain state employees "two unpaid holidays per calendar year for a reason of faith or conscience or an organized activity conducted under the auspices of a religious denomination, church, or religious organization."  Under this statute, the employer shall grant the employee's leave request "unless the employee's absence would impose an undue hardship on the employer or the employee is necessary to maintain public safety."

No. 38381-4-III
*Suarez v. State*

In *Kumar*, the court recognized that "'undue hardship' results whenever an accommodation 'require[s an employer] to bear more than a *de minimis* cost.'" *Kumar*, 180 Wn.2d at 502 (alteration in original) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977). Shortly after *Kumar* was decided, the legislature passed chapter 168, Laws of 2014. This legislation amended RCW 1.16.050 and granted certain State employees the right to two unpaid holidays per calendar year for reasons of faith. LAWS OF 2014, ch. 168, § 1. The bill provided that the State employer should grant the employee's leave request unless the absence would impose an undue hardship on the employer. *Id.* "Undue hardship" was to be defined by the office of financial management. LAWS OF 2014, ch. 168, § 2

In response to this directive, the office of financial management adopted a regulation defining "undue hardship" as an action requiring significant difficulty or expense to the employer. WAC 82-56-020. In considering whether to grant unpaid leave for religious purposes, a State employer should consider 10 factors:

> (1) The number, composition, and structure of staff employed by the employing entity or in the requesting employee's program.
> (2) The financial resources of the employing entity or the requesting employee's program.
> (3) The number of employees requesting leave for each day subject to such a request.
> (4) The financial impact on the employing entity or requesting employee's program resulting from the employee's absence and whether that impact is greater than a de minimus cost to the employer in relation to the size of the employing entity or requesting employee's program.

16

No. 38381-4-III
*Suarez v. State*

   (5) Impact on the employing entity, the requesting employee's program, workplace safety or public safety.
   (6) Type of operations of the employing entity or requesting employee's program.
   (7) Geographic location of the employee or geographic separation of the particular program to the operations of the employing entity.
   (8) Nature of the employee's work.
   (9) Deprivation of another employee's job preference or other benefit guaranteed by a bona fide seniority system or collective bargaining agreement.
   (10) Any other impact on the employing entity's operation or requesting employee's program due to the employee's absence.

WAC 82-56-020. While this regulatory definition applies when a state employer considers a leave request for the leave provided by statute, we see no need to use a different definition for the same leave granted beyond the two days provided in the statute.

Applying these factors to the circumstances in this case is a question of fact. *See Ansonia*, 479 U.S. at 70 (whether leave policy constituted reasonable accommodation was a question of fact). Here, the evidence raises a genuine issue of material fact as to whether accommodating Suarez's request for unpaid leave on September 29 would cause undue hardship for the School. In her deposition, Tammy Masters, the CR 30(b)(6) witness for the School, testified that the School has "several call-ins every night," and there is a process for covering those shifts by contacting volunteers first and then calling the mandatory overtime list. CP at 234-35. Suarez testified that she was frequently

17

No. 38381-4-III
*Suarez v. State*

called in to work mandatory overtime when "someone called in sick or did not show up to their shift." CP at 247.

To succeed on summary judgment, the School must present undisputed evidence that accommodating Suarez's request for unpaid leave on September 29 caused the School significant difficulty or expense. WAC 82-56-020. While the School contends that calling in an employee for mandatory overtime is more than a de minimus expense, nothing in the record demonstrates context. There is no evidence demonstrating the actual impact on the School's finances "in relation to the size of the employing entity or requesting employee's program." WAC 82-56-020(4). Nor is there evidence that the cost or inconvenience to the employees was more than de minimus. While the cost of calling in an employee on mandatory overtime might be significant to a smaller employer, the cost may very well be de minimus to a large employer.

The School also asserts that Suarez's request for leave on religious grounds cannot be compared to an employee who calls in sick. This issue is not sufficiently briefed in this case and we decline to decide whether a person seeking religious accommodation should be treated the same as a person calling in sick. Nevertheless, we note that the record only indicates that employees called in as "unavailable" without further explanation. This occurred so frequently that the School had a regular process for covering the shifts and negotiated mandatory overtime in the collective bargaining agreement. If the School is accommodating unplanned leave for secular reasons other

18

No. 38381-4-III
*Suarez v. State*

than sickness, it raises a question as to whether accommodating Suarez's request caused an undue hardship. On this disputed and undeveloped record, these questions should not be decided on summary judgment.

Suarez also brings a claim for failing to accommodate her weekly Saturday Sabbath. Again, we consider the facts in a light most favorable to Suarez. While acknowledging that she accepted a position that worked on Friday and Saturday nights, Suarez contends that she told her supervisor that her schedule conflicted with her Sabbath and asked to change schedules. She argues that the School should have changed her schedule to allow for Friday and Saturday nights off. In the alternative, Suarez asserts that the School should have told her to apply for another position with days off that did not conflict with her Sabbath. The School responded that these accommodations would cause undue hardship to the School and that it did invite Suarez to apply for another position when it included her in the mass email notice of the job opening.

We consider whether accommodating Suarez's beliefs by changing her scheduled days off would cause an undue burden. The School submits evidence that each CNA position has designated days off to maintain adequate staffing levels. Under the collective bargaining agreement, these days off cannot be rescheduled without changing positions. When positions with different days off become available, permanent employees outside their probationary period can bid on them based on seniority. If a job

19

No. 38381-4-III
*Suarez v. State*

does not receive bids from a permanent employee, the position is opened to probationary employees.

Suarez did not finish her probationary period and did not become a permanent employee. The School points out that the only way to change Suarez's days off was to change positions to one with days off that do not conflict with her Sabbath. But changing her position without going through the bidding system would violate the collective bargaining agreement. The School relies on *Hardison*, 432 U.S. 63, to support its position that an accommodation is an undue hardship if it causes the employer to violate a collective bargaining agreement.

In *Hardison*, the Court considered whether an employee's request to change his schedule to accommodate his religious beliefs would cause the employer undue hardship. Like the School, the employees were unionized and worked in a department that operated 24 hours a day, seven days a week. More senior employees had first choice of shift assignments, and less senior employees were often left with less desirable shifts. The employee in *Hardison* sought and obtained a job that required him to work on occasional Saturdays. The union was not willing to violate the seniority system, and the employee did not have enough seniority to bid for shifts having Saturday off. When the employee refused to work on Saturday, he was terminated for insubordination.

The United States Supreme Court held that the employer's duty to accommodate an employee's religious beliefs did not require the employer to take steps inconsistent

20

No. 38381-4-III
*Suarez v. State*

with a collective bargaining agreement. *Id*. at 79. In other words, an employer's duty to accommodate does not entitle an employee to preferences over other employees because of their religious practices:

> It would be anomalous to conclude that by "reasonable accommodations" Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII [of the Civil Rights Act of 1964] does not require an employer to go that far.

*Id*. at 81. After concluding that an employer cannot be forced to violate a collective bargaining agreement to make religious accommodations, the Court rejected alternative accommodations that would have decreased efficiencies in other jobs or increased wages. *Id*. at 79, 84. Such accommodations would require Trans World Airlines, Inc. to bear more than a de minimus cost and constitute undue hardship. *Id*.; *see also Harrell v. Donahue*, 638 F.3d 975, 981 (8th Cir. 2011).

Similarly, under WAC 82-56-020(9), undue hardship is demonstrated when a proposed accommodation would deprive another employee of their job preference or other benefits guaranteed by a collective bargaining agreement.

Here, as in *Hardison*, changing scheduled days off requires changing positions, which is covered by the bidding system set forth in the collective bargaining agreement. Therefore, Suarez's proposed accommodation of simply changing her scheduled days off would require the School to violate the bidding system in the collective bargaining

21

No. 38381-4-III
*Suarez v. State*

agreement. We agree that requiring the School to accommodate Suarez's religious beliefs by violating the collective bargaining agreement would cause an undue hardship.

Next, we consider whether the School could have accommodated Suarez by advising her to apply for a position with scheduled days off that did not conflict with the observation of her Sabbath. As an example, Suarez points out that during her employment, a position opened up with Saturdays off that was filled by a probationary employee with less seniority than Suarez. She contends that the School had a duty to take "affirmative steps to allow [Suarez] to fill this position." Appellant's Opening Br. at 11. We agree that if this position would have resolved the conflict, the School should have suggested to Suarez that she apply for the position.

The School did not respond to this suggested accommodation in its brief on appeal. When asked at oral argument, the School acknowledged that taking these affirmative steps would not be an undue hardship. Nevertheless, the School contends that it provided this accommodation when it included Suarez in a mass email to all employees announcing the job opening. The School argues that it was not required to do more because its duty to accommodate does not include the level of "hand-holding" suggested by Suarez, citing *Porter v. City of Chicago*, 700 F.3d 944, 952 (7th Cir. 2012).

In *Porter*, the union employee's work schedule conflicted with her Sunday church services. The employee was told that her request to change to a job assignment with Sundays off would be accommodated when an opening became available. *Id*. at 949. In

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38381-4-III
*Suarez v. State*

the meantime, her supervisor suggested a watch (shift) change to different hours of work to accommodate the employee's church services. The employee expressed no interest in this accommodation and wanted her days off changed.

The *Porter* court recognized that a "reasonable accommodation" is "'one that "eliminates the conflict between employment requirements and religious practices."'" *Id.* at 951 (quoting *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993) (quoting *Ansonia*, 479 U.S. at 70)). The accommodation does not have to be the one preferred by the employee so long as it eliminates the conflict. *Id.* The court found that since the employer offered the employee a shift change that would have eliminated the scheduling conflict without any impact on the employee's pay or benefits, the employer had offered a reasonable accommodation. *Id.* at 952. The employer did not need to offer a position with different work days, as preferred by the employee.

The employee in *Porter* also argued that the employer's offer to change shifts was insufficient because her supervisor mentioned it to her, but did not invite her to apply or inform her how to make such a request. *Id.* at 953. In rejecting this argument, the court noted that, "[i]n requiring employers to 'offer reasonable accommodations,' we have encouraged 'bilateral cooperation' between the employee and employer and recognized that employers must engage in a dialogue with an employee seeking an accommodation." *Id.* While cooperation and dialogue are important, courts have not required the level of hand-holding suggested by the employee. *Id.* Thus, the court found that the supervisor's

23

No. 38381-4-III
*Suarez v. State*

suggestion to change shifts was sufficient and met the employer's obligation to provide a reasonable accommodation.

In this case, taken in a light most favorable to Suarez, the evidence shows that she informed the School that her weekly schedule conflicted with her church service. Unlike *Porter*, however, the School does not point to any attempts it made to eliminate this conflict. The School does not claim that it asked for volunteers to switch shifts or days off, and the School does not assert that Suarez was told she could apply for a different position to eliminate the conflict. The only claim made by the School is that it included Suarez in the notice of job openings emailed to all employees. This passive, generalized action was not an attempt to accommodate Suarez's scheduling conflict. It was neither dialogue nor an attempt at cooperation. Unlike the employer in *Porter*, there is no evidence that the School offered or suggested any accommodations.

We follow the federal courts in their application of Title VII and hold that an employer's obligation to provide reasonable accommodations for an employee's religious beliefs requires the employer to take active or affirmative steps to resolve a scheduling conflict if it can be done without undue hardship. *See Proctor v. Consol. Freightways Corp. of Del.*, 795 F.2d 1472 (9th Cir. 1986) (fact that employee applied for position that would require her to work on her Sabbath did not excuse employer from its statutory duty to initiate good faith efforts to accommodate employee's religious beliefs); *Cosme v. Henderson*, 287 F.3d 152, 161 (2d Cir. 2002) (employer's multiple offers to

24

No. 38381-4-III
*Suarez v. State*

accommodate employee's Sabbath observance were reasonable and employee was not entitled to skip work every Saturday after bidding on a position he knew would require work on Saturdays); *Wright*, 2 F.3d at 217 (employer accommodated employee's Sabbath observance by inviting the employee to bid on four open positions that had days off that were congruent with his Sabbath).

   3.   PUBLIC POLICY CLAIM

The second claim raised by Suarez is whether there are genuine issues of material fact sufficient to prevent her public policy claim from being dismissed on summary judgment.  As we noted above, Suarez has preserved her tort claim for violation of public policy.  The tort claim for discharge in violation of public policy is narrower than the statutory claims allowed under the WLAD.  Whereas the statute provides damages for several adverse employment actions motivated by discrimination, the tort only applies to an employee discharged in violation of a public policy.  *Roberts v. Dudley*, 140 Wn.2d 58, 76, 993 P.2d 901 (2000).

To demonstrate a prima facie case for wrongful termination in violation of public policy, the plaintiff must produce evidence that her "termination was motivated by reasons that contravene an important mandate of public policy." *Becker v. Cmty. Health Sys., Inc.*, 184 Wn.2d 252, 258, 359 P.3d 746 (2015).  "[T]he burden [then] shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee." *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232-33, 685 P.2d 1081

25

No. 38381-4-III
*Suarez v. State*

(1984).  The tort for wrongful discharge in violation of public policy is generally limited

to four scenarios:

> "(1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing."

*Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 723, 425 P.3d 837 (2018) (quoting *Gardner v.*

*Loomis Armored, Inc.*, 128 Wn.2d 931, 936, 913 P.2d 377 (1996)).

"'The question of what constitutes a clear mandate of public policy is one of law'

and can be established by prior judicial decisions or constitutional, statutory, or

regulatory provisions or schemes." *Martin*, 191 Wn.2d at 725 (quoting *Dicomes v. State*,

113 Wn.2d 612, 617, 782 P.2d 1002 (1989)).  In this case, Suarez argues that she was

fired in violation of the public policy against religious discrimination.  She points to the

WLAD as defining this public policy.

The public policy against discrimination as set forth in the WLAD can form the

basis for a tort claim for wrongful discharges.  *See Roberts*, 140 Wn.2d at 66 (statutory

policy against discrimination provides the basis for wrongful discharge claim for

employee who lacks a statutory remedy); *Rose v. Anderson Hay & Grain Co.*, 184 Wn.2d

268, 274, 358 P.3d 1139 (2015) ("the existence of alternative statutory remedies,

regardless of whether or not they are adequate, does not prevent the plaintiff from

26

No. 38381-4-III
*Suarez v. State*

bringing a wrongful discharge claim"); *Mackey v. Home Depot USA, Inc.*, 12 Wn. App.
2d 557, 579, 459 P.3d 371, *review denied*, 195 Wn.2d 1031, 468 P.3d 616 (2020)
(recognizing that WLAD provides a clear mandate of public policy). Specifically, in
RCW 49.60.010, the legislature declared that "practices of discrimination" on the basis of
creed are a matter of state concern.

Suarez contends that she was fired for practicing her religion, which is her legal
right. She contends that she has a bona fide religious belief that requires her to
participate in religious holidays, that the holidays conflicted with her work schedule, and
that she told the School about the conflict and was nonetheless fired for failing to comply
with a work schedule that conflicted with her religious practice. The School
characterizes Suarez's argument as claiming an absolute privilege not to work on
religious holidays and argues that the WLAD prohibits discrimination but does not grant
an employee the absolute privilege of refusing to work a shift that conflicts with a
religious belief. The School contends that reading the WLAD and public policy to grant
such an absolute privilege would violate the establishment clause as noted by the
Supreme Court in *In re Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 710-11, 105 S.
Ct. 2914, 86 L. Ed. 2d 557 (1985).

In *Thornton*, the Court considered a Connecticut law that granted employees the
absolute privilege not to work on their Sabbath. Noting that the First Amendment to the
United States Constitution prohibits a state from advancing or inhibiting religion, the

27

No. 38381-4-III
*Suarez v. State*

Court held that the statute in question violated the establishment clause because it granted employees the absolute right not to work regardless of the secular interests of the employer. However, despite the School's argument to the contrary, *Thornton* does not dramatically alter the requirement for religious accommodations under Title VII. *Int'l Ass'n of Machinists & Aerospace Workers, Lodge 751 v. Boeing Co.*, 833 F.2d 165, 171 (9th Cir. 1987). Instead the requirement for accommodation is flexible and only requires reasonable accommodations that do not create an undue hardship. *Id.*

We do not read Suarez's public policy argument as claiming an absolute right not to work on her religious holidays. Under the public policy identified within the WLAD, Suarez has the right to practice her religious beliefs free from discrimination. If her work schedule conflicts with her religious practices, she has a right to reasonable accommodations so long as the accommodations do not create an undue hardship.

Although Suarez has waived her statutory claim of discrimination, her tort claim of discharge in violation of the public policy against religious discrimination presents issues and analysis similar to a statutory claim. *See Mackey*, 12 Wn. App. 2d at 579-80. In *Mackey*, a former employee raised claims for statutory discrimination as well as discharge in violation of the public policy against discrimination as defined by the WLAD. Division Two of this court applied the *McDonnell Douglas*[4] burden-shifting

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

No. 38381-4-III
*Suarez v. State*

framework to the plaintiff's statutory and tort claims to determine whether the evidence was sufficient to survive summary judgment. *Mackey*, 12 Wn. App. 2d at 571. Under this framework, the employee has the burden of demonstrating a prima facie case by producing evidence that she was within the protected class, discharged by the defendant, and doing satisfactory work. *Id.* If the employer can then demonstrate a legitimate nondiscriminatory reason for the termination, the burden shifts back, and the employee must show that this reason is a pretext. *Id.*

On appeal, the parties do not go through this analysis. Regardless, because there is rarely direct evidence of discriminatory motive, "[s]ummary judgment for an employer is rarely appropriate in a discriminatory discharge case." *Id.*

We have already determined that there are genuine issues of material fact as to whether accommodating Suarez's request for leave on September 29 caused an undue hardship. In *Ansonia*, the Court recognized that if a leave benefit provided in the collective bargaining agreement was being implemented in a discriminatory manner, this would give rise to a claim for discrimination. 479 U.S. at 71.

Here, Suarez alleges that she was terminated for exercising her religious beliefs. She claims that accommodating her beliefs by granting unpaid leave did not create an undue hardship because employees frequently called in as unavailable, and the School used a process for covering those shifts. She notes that three other employees also called in as unavailable on September 29, and there is no indication that they were disciplined or

29

No. 38381-4-III
*Suarez v. State*

terminated. This evidence is sufficient to raise a prima facie case of discrimination. As we noted above, whether the School's accommodations were reasonable or whether Suarez's request for unpaid leave on September 29 created an undue hardship are factual issues that cannot be resolved on this record.

CONCLUSION

We affirm the trial court's summary dismissal of Suarez's statutory claims for discrimination (disparate treatment) and retaliation. We reverse the summary dismissal of Suarez's statutory claim for failure to accommodate her religious beliefs and discharge in violation of public policy because unresolved factual issues in the record create genuine issues of material fact that preclude dismissal of those claims on summary judgment.

Affirm in part and reverse in part.

_____
Staab, J.

I CONCUR:

_____
Fearing, J.

No. 38381-4-III

LAWRENCE-BERREY, A.C.J. (dissenting) — This case presents excellent facts to address how the concepts of reasonable accommodation and undue burden apply to a claim of religious discrimination. In my view, the majority errs in its application of the law to these facts. I would affirm the summary dismissal of Adeline Suarez's claims because, as a matter of law, Yakima Valley School (School) reasonably accommodated her religious practices.[1]

Washington law supports a claim for failure to reasonably accommodate an employee's religious practices. *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 500-01, 325 P.3d 193 (2014). An employer can defend against such a claim "by showing that it offered the employee a reasonable accommodation or that an accommodation would be an 'undue hardship' on the employer." *Id.* at 502. An accommodation request that conflicts with the provisions of a collective bargaining agreement (CBA), thereby giving a plaintiff a benefit over other employees with more seniority, is an undue burden that is not required to be accommodated. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977).

---

[1] Ms. Suarez's tort claim that the School violated public policy is founded on the public policy expressed in the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. Because her statutory discrimination claim fails, so does her tort claim.

No. 38381-4-III
*Suarez v. State*—dissenting

Here, the School has a CBA that provides employees two days off per year for religious purposes. The agreement, however, requires employees to request days off at least 14 days in advance. The apparent reason for this is to give the School sufficient time to find an employee to cover the missed shift and to permit the covering employee time to adjust their personal plans. A last minute request for days off not only inconveniences the School, it impacts employees who need to alter their personal plans.

By April 2019, the School had permitted Ms. Suarez five days off for religious purposes, three more than permitted by the CBA. On September 8, 2019, Ms. Suarez requested four additional days off for religious purposes—September 28 and 29, and October 5 and 6. Her immediate supervisor had no authority to grant this request because Ms. Suarez had exceeded the two days permitted under the CBA. Her supervisor recommended Ms. Suarez make her request to the School superintendent. She failed to promptly do this. Instead, Ms. Suarez waited until September 27 and asked the superintendent for six days off for religious purposes—September 28 and September 29, as originally requested, and October 12, 13, 19, and 20. The superintendent denied the first two (September 28 and September 29) for insufficient notice, but granted the other four. This amounted to *nine* days in one year of approved time off for religious purposes.

Rather than accept this decision, Ms. Suarez worked September 28 (a Saturday) and, with only hours' notice, informed the School she would not be working September 29 (Rosh Hashanah)—one of the seven Holy Days recognized by the Jewish faith. Soon after, the School terminated her probationary status because of her history of missing

2

No. 38381-4-III
*Suarez v. State*—dissenting

mandatory overtime without justification and because of her choice, with only hours'
notice, to not work on September 29.

### 1. *Undue burden to accommodate the September 29 absence*

The majority concludes that summary judgment is precluded because a reasonable
jury might find that the School, without undue burden, could have accommodated Ms.
Suarez's absence on September 29. In so concluding, the majority ignores the fact that
the accommodation conflicts with the parties' CBA and would give Ms. Suarez a benefit
over other employees with more seniority. Specifically, the CBA permits all employees
two days of annual unpaid leave for religious purposes. Here, Ms. Suarez had months
earlier received five days of annual unpaid leave for religious purposes and September 29
would have been the sixth day. Accommodating a sixth day would provide Ms. Suarez a
benefit over other employees who otherwise would not have had to work that shift. For
this reason, the accommodation is an undue burden. *Trans World Airlines*, 432 U.S. at
79.

### 2. *Reasonable accommodation does not require "hand-holding"*

The majority also concludes that summary judgment is precluded because a
reasonable jury might find that the School, without undue burden, could have assisted
Ms. Suarez in finding an appropriate position. This conclusion is inconsistent with
federal authorities.

3

No. 38381-4-III
*Suarez v. State*—dissenting

Ms. Suarez asserts she did not know she had to apply for a different position to get a different position.  The School could not have known of her supposed confusion.[2] After she commenced litigation, she asserted for the first time that the School should have assisted her in finding a position that suited her religious practices.

Notably, Ms. Suarez does not claim to have any unique difficulty in learning of an appropriate position or of completing an application.  She could read e-mails and complete paperwork just like any other employee.  Regardless, federal authorities do not require the type of "hand-holding" that Ms. Suarez first requested after she commenced litigation.

The majority discusses *Porter v. City of Chicago*, 700 F.3d 944, 953 (7th Cir. 2012), which holds that an employer's reasonable accommodation of offering a job change with a different shift did not require "the hand-holding" of being invited to or even informed of how to apply.  The majority nonetheless distinguishes *Porter*, finding that the School did not reasonably accommodate Ms. Suarez because there is no evidence it told her to apply for a different job.  Majority at 22-25.

But the *Porter* court's decision did not hinge on the supervisor's suggestion that the plaintiff switch jobs; indeed, it recognized that its prior decision had held that a reasonable accommodation could come from a CBA that gave an employee the option to

---

[2] Indeed, if during Ms. Suarez's employment, the School had sent out several e-mails to employees (and Ms. Suarez) making them aware of job postings and asking for applications, Ms. Suarez's confusion appears wholly unreasonable.

4

No. 38381-4-III
*Suarez v. State*—dissenting

transfer assignments, even absent any direct communication with the employee. *Id.*

(citing *Rodriguez v. City of Chicago*, 156 F.3d 771 (7th Cir. 1998)).

The Supreme Court has similarly opined that a union seniority system for

preferred shifts and scheduling changes "represented a significant accommodation to the

needs, both religious and secular, of all [ ] employees." *Trans World Airlines*, 432 U.S.

at 78. *Wright v. Runyon*, 2 F.3d 214 (7th Cir. 1993), cited by the majority, goes further to

confirm that such a system is a reasonable accommodation.

In *Wright*, the plaintiff's position was eliminated and he was invited, along with

all other employees whose position was similarly eliminated, to bid for certain open jobs.

*Id.* at 215-16. While the offered jobs did not accommodate the plaintiff's religious

practices, as the eliminated position had, there were also four jobs open to bids by all

employees that would have accommodated the employee's practices, and, based on

seniority, he would have received at least two of those jobs. *Id.* at 216. The Seventh

Circuit considered the bidding system itself the reasonable accommodation that would

eliminate the conflict between the employer's requirements and the plaintiff's religious

practices. *Id.* at 217. The court held that the bidding system allowed the plaintiff to

select a position that would not interfere with his religion and that because the plaintiff

"chose not to take full advantage of the bidding system," he was responsible for the

consequences, not his employer. *Id.*

I would affirm the summary dismissal of Ms. Suarez's claims because the School

fulfilled its duty to reasonably accommodate by offering her nine annual days off for her

5

No. 38381-4-III
*Suarez v. State*—dissenting

religious practices, far in excess of the two annual days off permitted by the CBA. Any

accommodation beyond the two days required by the CBA was an undue burden because

it would give Ms. Suarez a benefit over more senior employees. Because the majority

misstates the School's duty to accommodate, I dissent.

_____
Lawrence-Berrey, A.C.J.